STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. NAZZARENO V. RIPA, ALIAS JACK RIPA, DEFENDANT-APPELLANT.

Argued June 1, 1965—Decided July 6, 1965.

*Mr. Frank E. Vittori* argued the cause for appellant.

*Mr. Martin J. Queenan,* Burlington County Prosecutor, argued the cause for respondent.

The opinion of the court was delivered

PER CURIAM. Defendant was sentenced to life imprisonment upon a conviction in Burlington County of first-degree

murder of John Short. He appeals to us as of right under
R. R. 1:2–1(c).

Two issues are raised. One is the sufficiency of the evidence,
and the other arises from the introduction of testimony con-
cerning defendant's refusal to discuss the charge with a police
officer.

■ As to the adequacy of the evidence, we are satisfied
the proofs in their aggregate establish a circumstantial case
sufficient to lead reasonable men to a verdict of guilty of mur-
der in the first degree. We see no point in a detailed discus-
sion of the proofs and hence we will not elaborate upon our
conclusion.

■ The other issue requires a new trial. Defendant was
apprehended in California by federal authorities with respect
to a stolen automobile. While in their custody he was interro-
gated by the Chief of the Burlington County Detective
Bureau. At first defendant denied knowing a John Short,
and after admitting he knew him, said he last saw Short some
months prior to the date when according to other testimony
defendant and deceased were seen together. That testimony
was admissible. However, the Chief of Detectives then said
he told defendant "we suspected that you had something to
do with his disappearance," and asked him what he had to
say. Defendant answered that he would not say anything.
The record continues:

"I said, do you realize that if you refuse to deny that you killed this
man that this could be used in a Courtroom against you?
He said, 'I refuse to say anything.' "

Later the Chief of Detectives testified that defendant "did
mention at that time that he was not going to say anything
until he had counsel."

This subject was pursued at considerable length in cross-
examination, in the course of which, in ruling on an objection
by the State, the trial court said of this testimony that "It
has to do with an admission. It has to do with the failure

of the defendant to answer questions and his reply: 'I refuse to say anything.' "

In summation the prosecutor stressed this testimony of the Chief of Detectives, saying:

"* * * And he actually begged this defendant to deny that he shot John Short. He even went further and said to him, 'Look, if you don't deny it, it can be used against you,' and that is true. Because he is using it against him in this trial; the fact that he did not deny that he shot John Short."

In its charge to the jury the trial court, in recounting the testimony, said "there was an attempt on the part of the Chief of County Detectives to get him to make a statement, but his answer was primarily to the effect, 'that I refuse to say anything.' " The court said nothing with respect to the value or probative force of this evidence.

▆ The doctrine of assenting silence presupposes an accusation made in circumstances in which silence can fairly be said to bespeak an agreement with the truth of the charge. *Donnelly v. State*, 26 *N. J. L.* 601 (*E. & A.* 1857); *State v. D'Adame*, 84 *N. J. L.* 386, 391 (*E. & A.* 1913); *State v. Sorge*, 125 *N. J. L.* 445, 447 (*E. & A.* 1940).

▆ Silence being equivocal, the soundness of the doctrine is much disputed, and when it is sought to be invoked against one already in police custody at the time of the accusation, the doctrine is still more difficult to defend. In that setting, the right of a suspect to remain silent is a conspicuous and likely explanation of his silence. That right could be nullified if a jury were permitted to infer the accused was silent because he acknowledged the truth of the accusation. Hence our cases have quite clearly revealed dissatisfaction with the concept in that setting. *State v. Butler*, 32 *N. J.* 166, 181–184 (1960), *cert.* denied 362 *U. S.* 984, 80 *S. Ct.* 1074, 4 *L. Ed. 2d* 1019 (1960); *State v. Kobylarz*, 44 *N. J. Super.* 250 (*App. Div.* 1957), certif. denied 24 *N. J.* 548 (1957); *State v. Garcia*, 83 *N. J. Super.* 345 (*App. Div.* 1964). While these decisions do not categorically reject the doctrine with

respect to one already in custody, their tenor suggests it would be a rare situation in which a failure to deny in those circumstances could be found to evince acquiescence in the truth of the accusation.

Actually, in the case at hand there was no accusation within the ambit of the doctrine, nor was the defendant silent. As to the first facet, there was nothing more than a desire on the part of the Chief of Detectives to question defendant and the officer's willingness to state his belief in defendant's guilt. *Cf. State v. Butler, supra,* 32 *N. J.,* at *p.* 184. As to the second facet, the record is clear that defendant did not bow in silence. On the contrary he spoke, and expressly stated his refusal to discuss the charge. It is impossible to find in that position an acquiescence in fact in the truth of the accusation.

 A refusal to talk could be turned against an accused only upon the wholly different premise that it reveals a consciousness of guilt. Needless to say, a suspect is under no duty to give a statement; on the contrary he is privileged to say nothing. *Escobedo v. State of Illinois,* 378 *U. S.* 478, 485, 84 *S. Ct.* 1758, 12 *L. Ed. 2d* 977, 983 (1964). Oddly, the Chief of Detectives here testified that when he sought to prepare a written statement he warned defendant that he need not answer and that his answers could be used against him. And, to add a further touch of incongruity, defendant had just been advised at the arraignment on the federal charge of his right to be silent. A refusal to speak when one has a right to be silent cannot be deemed to indicate consciousness of guilt. *Cf. Griffin v. State of California,* 380 *U. S.* 609, 85 *S. Ct.* 1229, 14 *L. Ed. 2d* 106 (1965); *State v. Lanzo,* 44 *N. J.* 560 (June 1, 1965).

 For these reasons we think it clear that when a defendant expressly refuses to answer, no inference can be drawn against him under the doctrine of acquiescence by silence or any other concept. See *Kelley v. United States,* 99 *U. S. App. D. C.* 13, 236 *F. 2d* 746, 749 (*D. C. Cir.* 1956); *United States v. Kelly,* 119 *F. Supp.* 217, 222 (*D. D. C.* 1954); *People v. McGee,* 31 *Cal. 2d* 229, 187 *P. 2d* 706, 712 (*Sup.*

*Ct.* 1948); *People v. Simmons*, 28 *Cal.* 2d 699, 172 *P.* 2d 18, 30 (*Sup. Ct.* 1946); *Barber v. State*, 191 *Md.* 555, 62 *A.* 2d 616, 620 (*Ct. App.* 1948).

■ The remaining question is whether this error was harmful. If all that appeared was that a defendant while in custody refused to answer questions, it might readily be held that there was no harm since jurors as reasonable men and women would likely brush such testimony aside because of its inherent lack of probative value. The difficulty here is that the Chief of Detectives testified that he told defendant that under the law a refusal to deny guilt would be evidence against him, the prosecutor told the jury that that was so, and the trial court adverted to the testimony in its charge without stripping that proof of the erroneous legal garb in which the prosecution had dressed it. Although, as we have said, the total evidence in the case is sufficient to justify the verdict, still the State's case is far from overwhelming, especially as to the degree of guilt. In these circumstances, we think the evidence in question, stressed as it was, had the capacity to influence the result. We therefore feel constrained to reverse the judgment and remand the matter for retrial.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.