### UNITED STATES of America, Plaintiff-Appellee,

v.

### Ramiro Ruben RAMIREZ and Evangelina Lopez Hernandez, Defendants-Appellants.

### No. 30511.

United States Court of Appeals, Fifth Circuit.

April 29, 1971.

Rehearing Denied and Rehearing En Banc Denied June 22, 1971.

---

11. *E. g.*, Larios v. Victory Carriers, 316 F.2d 63 (2d Cir. 1963).

12. Mroz v. Dravo, *supra*.

Seagal V. Wheatley, U. S. Atty., Wayne F. Speck, Asst. U. S. Atty., San Antonio, Tex., Haskell Shelton, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before SKELTON*, Judge, and MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Ramiro Ruben Ramirez and Evangelina Lopez Hernandez, brother and sister of the half-blood, appeal their conviction for dealing in heroin contrary to 21 U. S.C. § 174. We affirm the conviction of Ramirez and reverse as to defendant Hernandez.

In June of 1969, Billy Ray Bessent, working as an undercover agent for the narcotics section of the Texas Department of Public Safety, began a relationship with David Rowland, a known narcotics dealer and addict. Rowland introduced agent Bessent to several suppliers of narcotics over the State of Texas and in particular to an El Paso resident, defendant Ramiro Ramirez. Suspecting that Bessent was a police officer, Ramirez at first refused to talk or deal with the undercover agent. Instead, Ramirez sold five grams of heroin to Rowland who in turn resold the drug to agent Bessent.[1] However, in August of 1969, Ramirez finally agreed to sell heroin directly to Bessent, and the parties decided to meet and consummate the transaction at a house located at 362 Val Verde Street. This house was owned by Ramirez' mother who lived there along with Ramirez' brother, Mr. and Mrs. Hernandez, and the two Hernandez children.

As agent Bessent, accompanied by Rowland and Ramirez, entered the house on Val Verde, Mrs. Hernandez and her two children were sitting in the living room. The three men proceeded to the middle bedroom where Ramirez removed a small jar from a drawer and began slowly measuring the proper amount of

Joseph A. Calamia, Calamia & Fashing, John L. Fashing, El Paso, Tex., for appellants.

---

* Judge Byron G. Skelton, U. S. Court of Claims, sitting by designation.

1. Rowland was tried jointly and convicted along with defendants Hernandez and Ramirez but he does not participate in this appeal.

heroin by scooping a spoonful of the powdered drug out of the jar, scraping the excess powder off the top of the spoon with a razor blade, and then emptying the leveled spoonful into a plastic bag. According to Ramirez, fifty level spoonsful would equal the two ounces for which Bessent had agreed to pay $1,100.00. While the measuring operation was in progress, agent Bessent counted the purchase money and placed it on a table. Ramirez thereupon called out something in Spanish and Mrs. Hernandez appeared at the bedroom door and, upon hearing more Spanish words, removed the money from the table and left the room. Not being conversant in the Spanish language, Bessent was unable to understand the content of the conversation between Ramirez and his half-sister.

On September 12, 1969, Ramirez again agreed to sell Bessent a large quantity of heroin. This sale took place behind an El Paso shopping center in Ramirez' 1965 Pontiac. When Ramirez produced the heroin from under the car seat, agent Bessent drew his pistol and arrested the defendant while several other police officers closed to provide assistance.

After the arrest of Ramirez, police officers obtained a search warrant and went to the house at 362 Val Verde Street where they found Mrs. Hernandez, her two children, and two relatives in the living room. A thorough search of the house was conducted, and in the middle bedroom officers discovered forty "papers"[2] of heroin inside the pocket of a brown work shirt which was hanging in the closet. Mrs. Hernandez was arrested and taken to the police station.

At the ensuing trial, the government charged Ramirez with three counts of selling, transporting, receiving, and concealing heroin, and with one count of conspiracy to commit these substantive offenses, all in violation of 21 U.S.C. §

174. Mrs. Hernandez was charged with one count of concealing and transporting heroin, and with another count for conspiracy to import, receive, conceal and sell heroin, also in violation of 21 U.S.C. § 174. Ramirez did not attempt to refute any of the factual allegations against him but, instead, raised the defense of coercion by claiming that he was selling heroin only because a group of men from Mexico had threatened him and his family with immediate harm if he refused to cooperate. On the other hand, Mrs. Hernandez denied any knowledge of heroin being concealed or sold in the house in which she lived. The jury believed neither defendant and returned a verdict of guilty on all counts. Ramirez received a sentence of 15 years on each count to be served concurrently and Hernandez received two concurrent sentences of 5 years each.

On this appeal Mrs. Hernandez contends her motion for acquittal at the close of the testimony should have been granted because the evidence before the jury was insufficient to support her conviction. The burden was, of course, on the government to prove the element of knowledge by showing that Mrs. Hernandez knew the substance concealed and sold in her home was heroin. See Newsome v. United States, 5 Cir., 1964, 335 F.2d 237. Considering the evidence in the light most favorable to the jury's verdict, Causey v. United States, 5 Cir., 1965, 352 F.2d 203, we find the government failed to sustain its burden of proving knowledge as an element of the crime. A review of the record discloses that Mrs. Hernandez lived in the house at 362 Val Verde Street with her husband, her two children, her mother, and her brother, Roberto. On the day of the heroin sale, Mrs. Hernandez entered the middle bedroom while the drug was being measured and, after conversing in Spanish with Ramirez, picked up the $1,000.00 and left the room. When per-

2. A "paper" of heroin is simply a small amount of the drug wrapped in a piece of paper and ready for sale to the addict as one "fix", or dosage, which the addict reduces to liquid form and injects into the bloodstream.

sons seeking to buy heroin called the Val Verde address and asked for Ramirez, Mrs. Hernandez summoned her brother to the telephone. After the arrest of Ramirez, a search of the Val Verde house revealed 40 "papers" of heroin concealed in the same middle bedroom where the initial sale had taken place.

■ Admittedly, a jury could reasonably infer from the foregoing circumstantial evidence that Mrs. Hernandez was an active participant in the heroin business, but the question is whether the jury could so infer to the exclusion of every other reasonable hypothesis. See Roberts v. United States, 5 Cir., 1969, 416 F.2d 1216; Harper v. United States, 5 Cir., 1969, 405 F.2d 185. We hold they could not. In the first instance, there was absolutely no testimony that Mrs. Hernandez would recognize heroin for what it was when she saw it. Prior to the transaction in the middle bedroom[3] there was no evidence that Mrs. Hernandez had ever seen, heard of or had any contact whatsoever with narcotic drugs. For all the record shows, Mrs. Hernandez would have had no reason to suspect anything illegal upon seeing a small bottle containing a white powdery substance since, regrettably, heroin does not have distinctive identifiable qualities which would inform the uninitiate that criminal activity is afoot. The fact that Mrs. Hernandez received money and at the same time observed a substance later proved to be heroin does not of itself establish her complicity in the crime in the absence of some evidence that she knew or should have known a heroin transaction was taking place.

Neither does the additional proof that Mrs. Hernandez called Ramirez to the telephone when requested to do so by prospective heroin customers save the government's case. The customers merely asked to speak with Ramirez; the government made no attempt to show that a customer ever revealed the nature of his call to defendant Hernandez. Moreover, it would not seem unusual for Ramirez to receive calls at 362 Val Verde since his house, located two blocks away, did not have a telephone. As to the 40 "papers" of heroin seized from the middle bedroom, the record reveals nothing more than the fact that the contraband was discovered in a house where Hernandez and several other persons lived.

In summary, we hold that the evidence presented was insufficient to support a finding that Mrs. Hernandez knew that heroin was being transported, concealed or sold in the house in which she lived. The conviction of Hernandez on both counts is hereby reversed.

Defendant Ramirez, relying on Miranda v. Arizona, 1966, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, contends that plain error[4] was committed when the government cross-examined him about remaining silent during his arrest and thereafter. The colloquy began when Ramirez took the witness stand and told the jury that he was coerced into selling heroin by strangers from Mexico who kept himself and his family under constant threat of harm. Ramirez further testified that he desired to get caught so he would no longer be compelled to sell heroin. In an attempt to discredit the coercion defense, the government, on cross-examination, solicited the following testimony from Ramirez: (R. 349)

Question: "All right and you didn't tell a single one of those men (police officers) this story that you have told from the witness stand this morning, did you?

Answer: "At that moment I didn't think so.

Question: "In fact you never have told that story to any officer, that you told on the stand today?

Answer: "No."

3. The middle bedroom was not the bedroom in which Mrs. Hernandez slept.

4. None of the points of error raised by Ramirez on appeal were objected to by his trial counsel.

954

In its closing argument, the government urged the jury to believe that Ramirez was lying since a man actually under duress and fearful for his family's safety would have informed the police of such a dangerous situation upon being apprehended.

■ We reject the contention that Ramirez' silence is excludable from the jury's consideration by Miranda v. Arizona, supra, and hold that the cross-examination falls clearly within the ambit of Harris v. New York, 1971, 91 S.Ct. 643. In *Harris* the court held that while *Miranda* might prevent the use of certain statements obtained without proper warnings in the prosecution's case in chief, such statements could be admitted for the purpose of impeaching the testimony of an accused who took the witness stand.

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See United States v. Knox, 1969, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275; cf. Dennis v. United States, 1966, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973. Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.

"The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." Harris v. New York, supra, at 645–646.

The analogy of *Harris* to the case at hand is inescapable. Once Ramirez elected to testify and assert the defense of coercion he became subject to the "traditional truth-testing devices of the adversary process", including the right of the prosecution to show his prior inconsistent act of remaining silent at the time of his arrest. Thus, the district court was not in error in allowing the government to cross-examine Ramirez about his silence.

We have considered each of the several other contentions advanced by Ramirez and find them to be without merit. The conviction of Ramirez on all counts is therefore affirmed.

Reversed in part; affirmed in part.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing on behalf of Ramiro Ruben Ramirez is denied and no member of this panel nor Judge in regular service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc on behalf of Ramiro Ruben Ramirez is denied.