120 N.J. Super. 13 (1972)
293 A.2d 217
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BOBBY LEE GRIFFIN, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NATHANIEL GRIFFIN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 1972.
Decided July 5, 1972.
*14 Before Judges CONFORD, MATTHEWS, and FRITZ.
Mr. Arthur Penn, First Assistant Deputy Public Defender, argued the cause for appellants (Ms. Rita L. Bender, Assistant Deputy Public Defender, of counsel and on the brief; Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. John J. Hughes, Assistant Prosecutor, argued the cause for respondent (Mr. Geoffrey Gaulkin, Hudson County Prosecutor, attorney).
The opinion of the court was delivered by FRITZ, J.A.D.
Defendants, convicted by a jury of murder in the second degree, are brothers. The death involved resulted from a fight which had its genesis earlier in the day and culminated in a shooting spree in front of a tavern in the evening. Defendant Bobby Lee Griffin does not deny having shot the decedent. He asserts that his action was in his defense and in defense of defendant Nathaniel Griffin. Nor is the State's theory of Nathaniel's guilt predicated upon Nathaniel having fired the fatal shot. Rather he is charged with acting in concert with his brother, with having aided and abetted him. The trial judge instructed the jury as to the possibility of verdicts of murder in the first or second degree or not guilty as to both. Additionally he defined manslaughter and instructed the jury of the availability of this verdict for Bobby Lee but not for Nathaniel.
Bobby Lee took the stand in his own behalf and testified that he had acted in self-defense and in defense of his brother. Over his timely objection, the State was permitted to ask him, "Now, did you ever tell the police that your shooting of [the victim] was either in self-defense or in defense of your brother?" The response was in the negative. At least twice in summation the prosecutor commented upon the adverse inferences which, he suggested, should be drawn *15 with respect to the unlikelihood of the veracity of such a defense under these circumstances.[1]
The only evidence in the case with respect to events contemporaneous with and immediately subsequent to Bobby Lee's arrest was adduced from his testimony  uncontroverted in this respect  and the police statement prepared at the time. From this evidence it appears clearly that meaningful communication between Bobby Lee and the police, beyond his being informed he was under arrest when he was apprehended, commenced when the police sought a statement from Bobby Lee. This effort began with the police telling him he had been arrested for murder, and without pause thereafter advising him of his right to remain silent, presumably in conformity with the mandate of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
It is here urged by both defendants that reference at trial to an accused's silence subsequent to Miranda warnings while in police custody effectively demolishes the protection assured by the Fifth Amendment to the United States Constitution. We agree. To sanction such procedure would be to convert the Miranda warnings from an instrument of individual protection to a device enabling the State to compel the accused to stand mute for all time. It seems anomalous that we should offer the individual his constitutional right, knowing that if he heeds the warnings, he is forever burdened with his silence. Cf. Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943), reh. den. 318 U.S. 801, 63 S.Ct. 826, 87 L.Ed. 1164 (1943).
We hold that the silence of an accused subsequent to advice that he has a constitutional right to remain silent *16 may not be the subject of inquiry if he later chooses to testify and offer an exculpatory defense.
This was the precise holding of United States v. Nolan, 416 F.2d 588 (10 Cir.1969), cert. den. Nolan v. United States District Court, 396 U.S. 912, 90 S.Ct. 227, 24 L.Ed.2d 187 (1969), and we have found no contrary holding on the facts here presented. While the federal circuits are not in agreement among themselves as to the permissibility of evidence of prior silence to attack the credibility of exculpatory trial testimony, it is to be observed that in none which permitted the trial inquiry did it appear that the defendant's silence was preceded by Miranda warnings. Agreement with the principles we here recognize and implement may be found in United States v. Brinson, 411 F.2d 1057 (6 Cir.1969); Fowle v. United States, 410 F.2d 48 (9 Cir.1969); United States v. Semensohn, 421 F.2d 1206 (2 Cir.1970); Fagundes v. United States, 340 F.2d 673 (1 Cir.1965). Contra: United States v. White, 377 F.2d 908 (4 Cir.1967), cert. den. 389 U.S. 884, 88 S.Ct. 143, 19 L.Ed.2d 180 (1967) (based in part on "invited error"); United States v. Ramirez, 441 F.2d 950 (5 Cir.1971), cert. den. 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971), reh. den. 404 U.S. 987, 92 S.Ct. 445, 30 L.Ed.2d 371 (1971) (relying on Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); see infra); Sharp v. United States, 410 F.2d 969 (5 Cir.1969) (relying on Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926); see infra. A vigorous dissent accords with our reasoning here.).
We believe that substantial and important factual differences serve to distinguish Raffel, supra, and Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957) from the instant matter. In neither of those cases were the defendants invited to remain silent by Miranda-type warnings, although it may not be without significance that Raffel (whose conviction was affirmed) asserted that his silence (in an earlier trial) was produced by the strategic decision that the prosecution had not adduced *17 enough proof to convict him, and in Grunewald (where there was a reversal of the conviction) the prior silence (before a grand jury) was in reliance on Fifth Amendment rights. We observe as well that each of these cases preceded both Miranda and Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), reh. den. 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965).
Our determination is soundly predicated additionally on fair play considerations, and accordingly has due process overtones. It is notable that our Supreme Court has held even when an accused is well warned on custodial interrogation of the possibility that his silence may work to his detriment, should he still expressly refuse to answer, "* * * no inference can be drawn against him under the doctrine of acquiescence by silence or any other concept." State v. Ripa, 45 N.J. 199, 204 (1965).
Such a conclusion also seems mandated by Miranda where it is said:
In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. [384 U.S. 468, fn. 37, 86 S.Ct. 1625; citations omitted]
Abridgement of constitutional rights by the imposition of a penalty for their exercise was condemned in Griffin v. California, supra. The observation there (at 614, 85 S.Ct. at 1233) that such a penalty "cuts down on the privilege by making its assertion costly," is appropriate here.
The State argues that the determination we project is contrary to State v. Burt, 107 N.J. Super. 390 (App. Div. 1969), aff'd o.b. 59 N.J. 156 (1971), cert. den. 404 U.S. 1047, 92 S.Ct. 728, 30 L.Ed.2d 735 (1972).[2] We believe *18 Burt to be distinguishable if for no other reason than that defendant there was at no time advised of his right to remain silent. As Justice Hall observes in his opinion concurring in part and dissenting in part:
It is to be noted that nowhere in the case was any evidence introduced that defendant had been interrogated by the police at any time about Shorty's death or that he had made any inculpatory or exculpatory statements, had stood mute or claimed his privilege against self-incrimination. [59 N.J. 157, at 163]
That Burt might reasonably be distinguished in the appropriate case seems emphatically suggested in that opinion which characterizes and details the "bizarre aspects" of the proofs in that case. The instant case may well demonstrate a circumstance foreseen by Justice Hall which caused him to opine that the conclusion of the Appellate Division in Burt "may be too broadly expressed."
Here the prosecutor offered the question as designed not to produce substantive evidence of guilt, but to impeach defendant's credibility. The State adopts that position in its brief on this appeal, and in fact, argues:
Although silence upon invocation of the privilege [against self-incrimination] may not be utilized to infer guilt, it may be utilized upon cross-examination to impeach testimony of a witness where it will in fact so impeach. [Emphasis in brief]
Later the State expressly urges:
The true pivot upon which the propriety of the impeachment must turn is not whether such would be barred by a privilege to remain silent but rather whether that prior conduct was inconsistent.
While we are not so quick as the State to discard or disregard a disqualification predicated upon a constitutional right, we agree that inconsistency is the criterion to be satisfied for the admission of such impeaching evidence, providing there is no constitutional impediment to its admission. See and contrast Raffel and Grunewald, supra.
*19 We believe that silence alone, after Miranda warnings, cannot be said to be inconsistent with a trial assertion of self-defense. To justify the admission of evidence of silence as inconsistent conduct after defendant had been expressly told this was his privilege would be totally illogical. As was said in State v. Ripa, supra, "In that setting [custody], the right of a suspect to remain silent is a conspicuous and likely explanation of his silence." (45 N.J. at 203.) There thus appearing no inconsistency the question should not have been permitted, irrespective of constitutional considerations. Grunewald v. United States, supra; State v. Boscia, 93 N.J. Super. 586, 600-601 (App. Div. 1967); cf. State v. Ripa, supra.
This thesis also distinguishes the present case from Burt. There the Appellate Division said:
* * * Defendant's failure to tell anybody at the time that the shooting of Owens was accidental was relevant to the issue of the credibility of his courtroom testimony * * *. [107 N.J. Super. at 393]
We do not think it can be said that an accused's silence, after being advised that he may remain silent without concern (which is the Fifth Amendment right) has any tendency in reason to prove that when he does later speak to assert self-defense, he is lying.
Nor does Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), or State v. Kimbrough, 109 N.J. Super. 57 (App. Div. 1970), suggest to the contrary. These cases concerned prior statements unquestionably inconsistent, in part at least, with that which the defendants later related. Here, as noted above, neither inconsistent prior statements nor inconsistent prior conduct is involved.
The challenged inquiry offended constitutional principles and was irrelevant under the circumstances. We cannot say that beyond a reasonable doubt it did not have the potential for substantial and unwarranted prejudice. Its allowance over objection requires reversal of the conviction not only of *20 Bobby Lee but of Nathaniel as well, since his culpability was so inescapably involved, factually and legally, with the innocence or guilt of his brother.
Since the actions must be retried, we also observe that in the somewhat extraordinary factual complex of the circumstances here, a jury verdict of guilty of manslaughter by both defendants could not have been held to be improper (without regard to the propriety of respective verdicts in different degrees). This being so, Nathaniel is entitled to a manslaughter charge.
In view of the reversals we need not decide whether other alleged errors, asserted on the basis of objection below or plain error as the case may be, were of a nature and quality to require reversal. We express our views for whatever assistance may thus be given court and counsel on the retrial.
The necessity for expert testimony to enhance the knowledge and understanding of lay jurors with respect to other testimony of a special nature normally outside of the usual lay sphere, and the qualification of the proffered expert, ordinarily are matters resting within the sound discretion of the trial judge.
With respect to the charge on flight, we agree with the State that the purported omission which is here questioned was implicit in the charge. Needless to say, its explicit inclusion would have been better.
We are certain defendant Bobby Lee Griffin will not neglect at the retrial to request an instruction limiting the purpose of the testimony of defendant's prior conviction, and we are equally certain that on request such a charge will be given. We need not further consider whether its omission constituted plain error here.
Conviction in each case is reversed. The matters are remanded for a new trial.
NOTES
[1] A prior trial had resulted in a mistrial after failure of the jury to agree. Bobby Lee also testified at the first trial, and while it is not precisely so stated here, it is adequately apparent that he there offered the same defense. It does not appear that the substantial question raised here was there raised or considered.
[2] On May 8, 1972, Judge Kitchen of the United States District Court for the District of New Jersey granted Burt's application for a writ of habeas corpus on the ground that "the prosecutor's use of petitioner's silence violated his Fifth Amendment rights."