127 N.J. Super. 1 (1974)
316 A.2d 32
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANGELO GONZALEZ MORALES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 25, 1973.
Decided February 20, 1974.
*3 Before Judges KOLOVSKY, FRITZ, and CRANE.
Mr. Robert J. Konzelmann, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Willard E. Byer, Jr., Deputy Attorney General, argued the cause for respondent (Mr. Richard W. Berg, Deputy Attorney General, on the brief; Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by FRITZ, J.A.D.
Appellant, with another, was convicted by a jury of assault with an offensive weapon (N.J.S.A. 2A: 90-3) and possession of a firearm without a permit (N.J.S.A. 2A:151-41, subd. a). He was sentenced to a two to four-year term on the former charge, and to a consecutive one to three-year term on the latter.
Here he urges as grounds for reversal that (1) the sentence was manifestly excessive, (2) the two charges are fractionalizations of one offense, and (3) "the trial court committed reversible error by allowing the prosecutor to show the defendant failed to make an exculpatory statement to the police."
We find the first two assertions to be without merit. While the sentence is substantial, it is within statutory limits, and we cannot say we are persuaded that there was a mistaken exercise of discretion by the sentencing judge. State v. Tyson, 43 N.J. 411, cert. den. 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965). Nor do we agree that the offenses charged constitute a fractionalization within the doctrine enunciated in State v. Jones, 94 N.J. Super. 137 (App. Div. 1967), as defendant contends. In Jones defendant was charged with robbery while armed with a knife, and with unlawful *4 possession of the knife. Conviction of the latter charge required the State to prove unlawful use or an intent to use the knife unlawfully against another (N.J.S.A. 2A:151-56). The court there held that since proof of the robbery was necessary to prove both the robbery and the necessary ingredient of unlawful use or attempt so to use in the possession statute, there was a merger of offenses and only one crime could be charged. 94 N.J. Super. at 140. In the matter before us the prohibition of the possession statute is violated by mere possession without a permit (subject to certain exceptions not here applicable). Conviction on the possession charge could be had without proof of the assault, and proof of the illegality of possession was not necessary for the assault charge. See State v. Leibowitz, 22 N.J. 102 (1956).
The third ground set forth above is meritorious and warrants reversal.
Defendant, who had no prior criminal record, elected to testify on his own behalf. His testimony was elicited through an interpreter. On direct examination he admitted that on the night of the crime he had a gun with him which, he claimed, he had just bought from someone whose name he did not know, but who was going to Puerto Rico and needed to dispose of the gun. Defendant said, "He cried in necessity to me." Defendant testified that he intended to take the gun home and keep it. But he and the codefendant stopped at "the Frank Club" where, defendant testified, there was a man who had "his head down at the counter * * * two or three minutes later he said somebody robbed me." Defendant and his friend went outside, "maybe to call the police," but were detained on the sidewalk and arrested. It is significant that nowhere in his direct testimony did defendant testify, either directly or indirectly, that he had told the police anything with respect to the events in question. Nor was any such information volunteered on cross-examination prior to the question and unsuccessful defense objection which is here challenged.
*5 We observe at this point that while nothing of significance was developed in the State's case in chief with regard to any statement (or absence thereof) of Morales at police headquarters after his apprehension, credible evidence in the record in testimony from a police officer demonstrates that Morales had been advised of his right to remain silent pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
On cross-examination by the assistant prosecutor defendant was asked if, when he went to the police station, he talked to "Spanish Detective Villabobos." An affirmative response elicited the further question: "Did you tell him that you had bought that gun from a man who was in necessity and wanted to go to Puerto Rico to see his sick mother?" An immediate and timely objection followed, and was overruled. We think this was error.
The right of an accused to remain silent after Miranda warnings cannot be diminished by a concern that such silence may be used against him, or, put otherwise, may be utilized to compel his forever remaining silent. State v. Griffin, 120 N.J. Super. 13 (App. Div. 1972), certif. den. 62 N.J. 73 (1972). We held this was so with respect to later exculpatory statements. We see no reason why the rule should not be the same a fortiori where the subsequent statement is, as here, inculpatory. The considerations of Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and State v. Kimbrough, 109 N.J. Super. 57 (App. Div. 1970), were distinguished in State v. Griffin, supra, and the distinction applies here as well. Additionally, it does not appear that Miranda warnings were given in either Harris or Kimbrough. Cf. State v. Burt, 107 N.J. Super. 390 (App. Div. 1969), aff'd o.b. 59 N.J. 156 (1971), cert. den. 404 U.S. 1047, 92 S.Ct. 728, 30 L.Ed.2d 735 (1972). The essential inconsistency, said in Harris, supra, to justify the admission of "traditional truth-testing devices" in a challenge to credibility on the basis "of confrontation with prior inconsistent utterances," is absent when silence can be reasonably *6 explained as consequent to Miranda warnings. Without the inconsistency, even relevance disappears.
The dissent, relying particularly on Harris v. New York, supra, disclaims error on the basis that, "Once defendant had testified that he had told the police his story about the purchase of the gun, the State had the right to attack defendant's credibility * * *." We subscribe to this proposition as a general statement, and have no doubt that had defendant so testified prior to the impugned inquiry on cross-examination, such a determination would be eminently sound. But under the circumstances here present, the conclusion begs the issue: it was the compulsion secured by the erroneous overruling of the objection which produced defendant's only testimony as to what he had told the police.
We are satisfied that the obligation imposed upon a testifying defendant by Harris "to speak truthfully and accurately" (401 U.S. at 226, 91 S.Ct. 643) was not intended to create an obligation to speak where none exists and in defeasance of Miranda. State v. Griffin, supra.
The dissent further justifies the result  and distinguishes Griffin  by noting that defendant did not testify, in answer to the objectionable question, that he remained silent. The dissent notes, correctly, that defendant's testimony was that he had told his story to the police. This rationalization makes the availability of the constitutional protection depend on the answer given, rather than the propriety of the inquiry. In this context at least, such an approach completely emasculates the Fifth Amendment protection, for if the testimony of an accused as to prior silence or speech differs from evidence which the State produces, there is no error under the dissent's rationale, and if he testifies conformably the error is harmless. It is axiomatic that the time to test a question for its propriety (as contrasted with the harmlessness vel non of the answer) is when the question is asked, and not after the answer is given.
*7 Satisfied that the court below was mistaken in its ruling, we turn to the question of whether the error was sufficiently prejudicial to warrant a reversal, for defendant, in his compelled response, testified that he had in fact told the police substantially that to which he testified on direct examination, except for some few facts about which he replied that he was not asked. Had this been the end of it, the error might well have been harmless.
But in rebuttal the State produced the detective to whom defendant said he had told of the acquisition of the gun. This witness contradicted defendant's testimony and said, "He refused [sic] to say anything at all." Thus the State had an opportunity to which it was not rightfully entitled, to confront defendant head-on, on an issue not relevant to guilt or innocence, in a credibility battle. This opportunity would not have occurred except for the trial error. That the effort was intentional is demonstrated by the State's concession at argument that the prosecutor knew of the availability of the detective's testimony that defendant had said nothing. The soundness of this concession is illustrated by the representation of the State, at the outset of the trial, on inquiry from the court, that there were no statements or concessions, exculpatory or inculpatory, involved.
Then, in summation, the assistant prosecutor, in pointing up the importance of credibility, commented vigorously on the divergent testimony relating to whether defendant said anything to the detective. He asked the jury if defendant's story concerning the gun acquisition was true, "Don't you think he would tell the police that?"
Whether the inquiry as to the effect of the error is measured in terms of plain error in view of the imprecision of the objection, or in terms of harmless error upon the assumption that the objection should have served to alert the judge sufficiently, we cannot say that in the circumstances here *8 present defendant had a fair trial, at least with regard to the assault count. Some inconsistencies in the testimony of the State's witnesses were apparent. Some discrepancies existed. In these circumstances we are satisfied that there was a distinct potential for improper prejudice and a real possibility of a miscarriage of justice The interests of justice require a new trial on the assault count.[1]
On the other hand, defendant's guilt on the possession count is inescapably clear from his own volunteered testimony on direct examination. The verdict of guilty returned as to this count was uninfluenced, beyond any doubt, by any trial error.
The conviction on the first count for assault is reversed and the count is remanded for a new trial. The conviction for unlawful possession of a firearm is affirmed.
KOLOVSKY, P.J.A.D. (dissenting).
I find no prejudicial error and would affirm defendant's convictions on both counts of the indictment.
To place the issues presented in proper perspective, a brief resume' of the trial proceedings will be helpful.
The State's opening statement outlined briefly the testimony it expected to elicit from the victim Rivera and from the two police officers who, in the course of a routine patrol, witnessed the alleged armed assault. After an opening statement by counsel for a codefendant, Jiminez, defendant Morales' attorney also opened to the jury. He emphasized that it would be the jury's function to decide who to believe  *9 "whose version will [the jurors] accept or what witnesses will [the jurors] choose to believe." He urged them to observe the demeanor of the witnesses, adding:
Are you persuaded by what [the witness] says? Think in terms of whether or not the witness rings true, if it is probable, if it is logical, if it is consistent with what he may have said on previous occasions, perhaps immediately upon his first conversation with the police or perhaps what he said before the Grand Jury and/or in the form of a statement; and whether or not what a witness tells you is consistent with the testimony of the other witnesses in the case.
Finally, he told the jury that his client, Morales, would testify and that his testimony would be different from that which the jury would hear from some of the State's witnesses, asking that the jurors withhold judgment and give defendant "the same opportunity to be believed as you would any other witness in the case."
The proofs established, without contradiction, that defendant was carrying a pistol without a permit in violation of N.J.S.A. 2A:151-41(a). Defendant does not dispute that when he was arrested at the scene of the alleged assault, he was carrying a fully loaded automatic pistol and seven additional rounds of ammunition, the latter found in a package of cigarettes when he was searched at police headquarters. The only asserted defense to that charge appears in defendant's testimony on direct examination that he had purchased the weapon and ammunition for $35, shortly before his arrest, from a man he had never seen before and who accosted him on a street in Paterson and told him that he needed the money for a trip to Puerto Rico to see his sick mother.
The asserted defense was patently insufficient. The trial court gave defendant more than he was entitled to when it charged the provisions of N.J.S.A. 2A:151-42 which make N.J.S.A. 2A:151-41 inapplicable to persons carrying a pistol "from any place of purchase to his dwelling house or place of business." By the express provisions of the section, *10 the stated exemption is applicable only if, during the course of travel,
* * * the firearm is unloaded and contained in a closed and fastened case, gunbox, securely tied package, or locked in the trunk of the automobile in which the person is transporting the firearm.
Defendant denied that he had taken the automatic pistol from his person and had pointed it at Rivera. However, the jury choose to believe, as it had the right to do, the testimony of the arresting officers, eye witnesses to the incident, and that of the victim Rivera that the assault had taken place, that defendant Morales had drawn an automatic revolver from his pants, and after cocking the weapon had pressed it into Rivera's stomach.
The circumstances which lead the majority to conclude that a reversal is mandated by State v. Griffin, 120 N.J. Super. 13 (App. Div. 1972), certif. den. 62 N.J. 73 (1973), start with a series of questions asked by the prosecution on cross-examination of defendant relating to the story he told on direct examination with respect to his purchase of the weapon. Defendant was thereafter asked whether he had talked to "Spanish" Detective Villabobos when he went to the police station. After receiving an affirmative reply, the prosecutor asked:
Q. Did you tell him that you had bought the gun from a man who was in necessity and wanted to go to Puerto Rico to see his mother?
Defendant's counsel objected:
Objection. No foundation for the question in any part of the direct examination or has there been any testimony or evidence in the case that he was ever asked any of those questions.
The objection was overruled and defendant then testified and reiterated that he had told Detective Villabobos that he had purchased the gun from a man about to return to Puerto Rico and had paid $35 for the gun. He insisted that his testimony *11 that he had told the story to the detective was "the truth." He had not told the detective about the cigarette box with the bullets in it because the detective "didn't ask [him] about that," nor did he tell the detective "where he got the bullets from."
On the State's rebuttal Detective Villabobos testified that defendant had never told him the story about the circumstances of his alleged purchase of the gun  "he refused to say anything at all." Cross-examination of the detective revealed that the refusal followed the detective's advising defendant of his "constitutional rights" by giving him the Miranda warnings.
In my view there was no error. Once defendant had testified that he had told the police his story about the purchase of the gun, the State had the right to attack defendant's credibility by showing that his trial testimony as to what he had said to the detective was false, that in fact he had not told that story to the police.
Apposite is what the court said in Harris v. New York, 401 U.S. 222, 225-226, 91 S.Ct. 643, 645-646, 28 L.Ed.2d 1 (1971):
Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. * * * Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately * * *.
The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.
See also, State v. Burt, 107 N.J. Super. 390, 393 (App. Div. 1969), aff'd o.b. 59 N.J. 156 (1971), cert. den. 404 U.S. 1047, 92 S.Ct. 728, 30 L.Ed.2d 735 (1971); U.S. ex rel. Burt v. New Jersey, 475 F.2d 234 (3 Cir.1973), cert. den. 414 U.S. 938, 94 S.Ct. 243, 38 L.Ed.2d 165 (1973); State v. Kimbrough, 109 N.J. Super. 57 (App. Div. 1970); United States v. Ramirez, 441 F.2d 950, 954 (5 Cir.1971); State v. Jackson, 201 Kan. 795, 443 P.2d 279 (Sup. Ct. 1968), *12 cert. den. 394 U.S. 908, 89 S.Ct. 1019, 22 L.Ed.2d 219 (1969).
In State v. Jackson, supra, it appeared that:
The [defendant] took the stand in his own defense and stated that he never left the automobile in which his codefendants were riding and knew nothing about what took place at the victims' automobile. On cross-examination he was asked if he had made such a statement before the trial and he replied that he had not had an opportunity to do so. A deputy sheriff was then called who testified that the appellant had been advised of his rights and requested to give a statement but refused to do so. [443 P.2d at 281; emphasis added]
The court rejected defendant's contention that his cross-examination and the rebuttal testimony were improper and a violation of his rights under Miranda.
State v. Griffin, 120 N.J. Super. 13 (App. Div. 1972), certif. den. 62 N.J. 73 (1973), is clearly distinguishable. There it was held error to elicit from a defendant Lee, who testified that he had acted in self-defense and in defense of his brother, that he had not told that story to the police. The court distinguished Burt and Kimbrough because Lee's silence  evidence of which would otherwise be admissible under the latter two cases to show "his prior inconsistent act of remaining silent at the time of his arrest," United States v. Ramirez, supra  was induced by the Miranda warnings he had received.
Here, however, the State did not elicit testimony from defendant Morales that he had remained silent. On the contrary, his testimony was that he had told his story to the police. The evidence of his silence offered on rebuttal was admissible to prove the falsity of that testimony. In this aspect we are not concerned with what motivated the silence testified to by the police. We are concerned only with whether defendant was testifying truthfully when he said that he had told his story to the police.
Nor is it of any moment that defendant's testimony that he had told the story to the police was given after the objection to the prosecutor's question was overruled. If the constitutional *13 ground now urged had been the basis of the objection interposed by defense counsel  it was not  and if defendant had then answered that he had not said anything to the police, the overruling of the objection would, under Griffin, constitute prejudicial error. But in view of defendant's answer that he had not remained silent, that in fact he had told his story to the police, he is in no position to claim that he was deprived of his constitutional right to remain silent.
Defendant may not base a claim of error on the assertion that had the objection been sustained, as the majority says it should have been, he would not have had the occasion to testify that he had told his story to the police and would not then have been subjected to the contradiction of that testimony on he State's rebuttal. Irrespective of whether the court ruled properly in overruling the objection, it was the obligation of defendant, as it would be that of any other witness, "to speak truthfully and accurately." Harris v. New York, supra. "It is no defense to perjury that the witness' false testimony was inadmissible and was improperly admitted into evidence." 3 Wharton's Criminal Law and Procedure (Anderson ed. 1957), § 1314 at 681; see also, State v. Falco, 60 N.J. 570, 585 (1972).
I would affirm as to both convictions.
NOTES
[1] Because of our determination on the merits, we need not consider here whether we should reverse without regard to the presence or absence of prejudice, to protect the integrity of the Fifth Amendment by the deterrence of unlawful prosecutorial conduct. See United States v. Calandra, ___ U.S. ___, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).