Samuel **SHARP** and Jasper Levi
Thornton, Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 26120.

United States Court of Appeals
Fifth Circuit.

May 6, 1969.

John D. Varnell, Atlanta, Ga., for
Sharp and Thornton.

E. C. Brannon, Jr., Gainesville, Ga.,
for Woods.

Charles L. Goodson, U. S. Atty.,
Charles B. Lewis, Jr., Asst. U. S. Atty.,
Atlanta, Ga., for appellee.

Before JOHN R. BROWN, Chief
Judge, AINSWORTH, Circuit Judge, and
FULTON, District Judge.

FULTON, District Judge:

Appellants Samuel Sharp and Jasper
Levi Thornton were convicted after jury
trial of an offense involving possession
of non-taxpaid distilled spirits, in viola-

tion of Title 26, United States Code §§ 5205(a) (2) and 5604(a) (1). Their appeal pivots on the narrow question of whether it is error for a prosecutor to inquire of a defendant on cross examination why he did not offer the same explanation of his actions to officers at the time of his arrest that he subsequently offered on direct examination at trial.

Appellants were pursued and arrested a short distance from the scene of the offense. Neither made any statement to the arresting officers concerning the nature of their activities immediately prior to the arrest. Both appellants and their co-defendant, John Bailey Woods, elected to testify in their own behalf at trial. All three denied any complicity in the crime. On cross examination, Sharp and Woods were asked by the Assistant United States Attorney why they had not made the same exculpatory statements at the time of arrest that they made at trial. Defense counsel objected to these questions. The complained-of colloquies are as follows:

| | |
|---|---|
| *Prosecutor's Question to Sharp:* | What is your answer to that question as to why you didn't make a statement to them concerning what you had been doing? |
| *Answer:* | I don't know. I was just scared. That's the reason, because I ain't got in no trouble, nothing like that. |
| *Prosecutor's Question to Woods:* | Why didn't you tell them what you stated in court here today? |
| *Answer:* | They didn't ask me. |

Appellant Thornton was not asked a question of this nature. His appeal is based on a theory of derivative harm caused to him by the questions directed to his co-defendants.

■■ It is elementary that a defendant who elects to testify in his own behalf is subject to cross examination and impeachment just as is any witness. Grunewald v. United States, 1957, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931. It is equally fundamental that it is error for a prosecutor to comment to a jury about a criminal defendant's failure to take the witness stand in his own behalf, or his failure to answer a particular question which would violate his Fifth Amendment right against self-incrimination. Griffin v. California, 1965, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; Johnson v. United States, 1943, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704; Wilson v. United States, 1893, 149 U.S. 60, 13 S. Ct. 765, 37 L.Ed. 650. In the case before us, the trial judge ruled that the quoted questions were within the permissible cross examination of these testifying defendants. The question for our determination is whether the above-quoted colloquies prejudicially called the attention of the jury to the exercise by appellants of their Fifth Amendment right to remain silent when they were arrested.

The leading case in this area is Raffel v. United States, 1926, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054. In *Raffel*, the first trial for conspiracy to violate the National Prohibition Act, resulted in a hung jury. Raffel was tried a second time for the same offense. A prohibition agent testified at both trials that Raffel had admitted ownership of a whiskey drinking place. Raffel testified only at the second trial, denying having made such an admission. On cross examination he was asked to explain why he had not controverted the agent's testimony at the first trial. The conviction obtained

at the second trial was appealed on the propriety of that question. The Supreme Court upheld the conviction, explaining that:

> The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. When he takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. He may be examined for the purpose of impeaching his credibility. His failure to deny or explain evidence of incriminating circumstances of which he may have knowledge may be the basis of adverse inference, and the jury may be so instructed. His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing. If, therefore, the questions asked of the defendant were logically relevant, and competent within the scope of the rules of cross-examination, they were proper questions, unless there is some reason of policy in the law of evidence which requires their exclusion. Raffel v. United States, supra, at 496–497, 46 S.Ct. at 567–568. (Citations omitted).

Simply stated, the *Raffel* rule is that a criminal defendant who takes the stand to testify in his own behalf can be cross examined and impeached as any other witness, unless under the particular circumstances of the case specific questions should be excluded because their probative value on the issue of the defendant's credibility is so neglible as to be far outweighed· by their possible impermissible impact on the jury. Grunewald v. United States, *supra*.

In *Grunewald*, a defendant was asked on cross examination why he had asserted the Fifth Amendment before the grand jury in response to the same questions which he later answered at trial. The Supreme Court reversed the conviction, reaffirming *Raffel*, but stressing that the *Grunewald* situation differed in

that it turned on whether the cross examination was in fact probative in impeaching the defendant's credibility. The Court held that it was not, since under the particular circumstances of that case the defendant's silence before the grand jury was wholly consistent not only with his innocence, but also with his later testimony at trial.

A similar situation arose in Stewart v. United States, 1961, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84. Again the Court specifically distinguished *Raffel*. Stewart was thrice tried for the same offense and took the stand only at the third trial, on which occasion his testimony was "pure gibberish", having no substance whatever. The prosecutor pointed out Stewart's previous failure to testify, and the Supreme Court reversed the conviction distinguishing *Raffel* by holding that "gibberish" is not subject to impeachment, since by its very nature it can be neither true nor false.

A recent Supreme Court decision, Simmons et al. v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, is somewhat analogous to the case *sub judice*. There the Court held that it is error for a trial court to admit in evidence on the issue of guilt incriminating statements given by a defendant in support of an unsuccessful pretrial motion to suppress. Such a practice would require a defendant to surrender his Fourth Amendment right against unreasonable search and seizure in order to maintain his Fifth Amendment right to remain silent. The *Simmons* case is distinguishable from the case before us, however, in that it involved former statements made by a defendant, which were received in evidence to prove his guilt, rather than to impeach his credibility. In this case, former silence rather than former statements is involved, and the evidence was admitted on the issue of credibility rather than the issue of guilt.

 Appellant Sharp voluntarily took the stand to testify. He knowingly subjected himself to the possibility of damaging impeachment cross examination on the issue of his credibility. He was asked

on cross examination why he had not offered the same explanation to arresting officers that he did at trial. He claims on appeal that the implication of this question was that he may have fabricated the explanation of his activities subsequent to the night of his arrest. If such an inference were drawn from the question and Sharp's answer, it would be logical and relevant to the issue of his credibility as a witness, and therefore permissible. However, as it happens in this case, Sharp's answer was harmless. He said he didn't explain his activities to the officers because he was scared, a logical and innocuous explanation. Having assumed the peril of impeachment on cross examination, he cannot now complain of the prosecutor's efforts to attack his credibility.

██ Appellant Thornton also took the stand, but he was not asked the complained-of questions. Rather, he charges that because his co-defendants Sharp and Woods were so interrogated, he was derivatively damaged. There is no merit in this contention. The Fifth Amendment privilege of silence is personal and can ordinarily be asserted only by the one to whom improper questions are directed. Although it is true that a case can arise in which convictions of co-defendants must be reversed because errors committed as to one defendant were so substantial as to affect jointly tried co-defendants, Hamilton v. United States, 5 Cir. 1969, 409 F.2d 928, such is certainly not the case with Thornton. We have already held that the answer which was given by Sharp afforded him no ground for reversal. How then could his answer constitute reversible error for Thornton? It is equally certain that Thornton was not harmed by the answer which was made by Woods who replied: "They didn't ask me." The answer of Woods, like that of Sharp, was plausible and innocuous. It was devoid of prejudice to either Woods or Thornton.

Affirmed.

JOHN R. BROWN, Chief Judge (dissenting):

I am compelled to dissent. In this day of expanding human rights and expanding constitutional rights, it simply cannot be the law that the assertion of one right may mean the relinquishment of another. I agree that *Raffel* stands for the proposition that once the defendant takes the stand he cannot pick and choose —he may be put to the test concerning his activities, but he cannot be asked if he made a statement to the arresting officers when the prosecution knows that the answer would demonstrate that he declined to make any statement.

The principles of the Fifth Amendment as enunciated in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, make it abundantly clear that an accused has an absolute right to remain silent. It is not an if-but-or-sometimes partial privilege, it is a complete and absolute right. Here appellant Sharp exercised that right when he was questioned by the arresting officers: He declined to make any statement. The unequivocal exercise of that absolute right cannot now operate to his detriment. The Supreme Court made this clear in *Miranda:*

"In accord with this decision, it is not permissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." 384 U.S. at 468 n. 37, 86 S.Ct. at 1625 n. 37, 16 L.Ed.2d at 720 n. 37.

They restated it in Schmerber v. California, 1966, 384 U.S. 757, 765 n. 9, 86 S.Ct. 1826, 1833 n. 9, 16 L.Ed.2d 908, 916 n. 9.

This circuit has also taken a strong stand on the protection of Fifth Amendment rights. In Baker v. United States, 5 Cir., 1966, 357 F.2d 11, 13 we held "it was reversible error to have allowed the FBI Agent to testify that when appellant was first questioned, he indicated that he wanted a lawyer and thereafter made no further statement. * * * In asking for counsel before making any statement,

appellant was exercising a Constitutional right which the Supreme Court has time and again declared to be guaranteed to all persons accused of crime. To have proven that appellant requested the right of counsel and thereafter made no further statement was, we feel, as objectionable as it would have been to comment on a defendant exercising his Constitutional right not to take the witness stand."

This Court recently reemphasized its position in Walker v. United States, 5 Cir., 1968, 404 F.2d 900 where we held the Trial Court erred in allowing introduction of Walker's Fifth Amendment assertion to a third party during a private conversation after Walker's arrest. "A claim of privilege cannot be equated with silence. When an accused responds to a question, or even to an accusation, with an assertion of a claimed legal or constitutional right, the jury should not be permitted to infer from such an assertion any consciousness of guilt or tacit admission. * * * We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." [1]

I think the prior decisions of this Court and the Supreme Court make clear that no detriment may flow from the exercise of a Constitutional right. The practice sanctioned here by the majority opinion has no redeeming value and can only lead to trouble. It is but another amazing instance of excess zeal or, more likely, momentary but decisive thoughtlessness of the prosecutor. Whatever probative effect recitation of silence at the time of apprehension might have it cannot be inquired into if there is a likelihood that the answer will reveal either that the accused stood mute, or worse, formally invoked the Fifth Amendment. This is risky business by the prosecutor for unless he has a substantial basis for believing that the accused *did* make a response—in which event the inquiry is then on *what* he said, not as to why he said nothing—the prosecutor is bound to know that the inquiry trespasses on the sanctuary of the Fifth Amendment.

Had the colloquy gone like this:

Prosecutor: Did you tell the officers this story at the time they stopped you?

Defendant: No, sir.

Prosecutor: Why did you not say anything?

Defendant: I told them I was claiming the Fifth * * *

the error would have been graphic and it would have orbited to a Constitutional apogee. For all practical purposes that was the implied, if not express, interrogation and response put here.

Since Sharp and Thornton were tried together for this spirits violation, they either swam or sank together. If the introduction of this evidence was error as to Thornton, I think it necessarily worked to Sharp's detriment, too. Hamilton v. United States, 5 Cir., 1969, 409 F.2d 928.

I respectfully dissent.

1. To the same effect see Judge Godbold's dissent in Hayes v. United States, 5 Cir., 1969, 407 F.2d 189.

Four Circuits have taken the position that illegal statements obtained without advising an accused of his Miranda rights may not be used for impeachment. Proctor v. United States, D.C.Cir., 1968, 404 F.2d 819; United States v. Fox, 2 Cir., 1968, 403 F.2d 97; Groshart v. United States, 9 Cir., 1968, 392 F.2d 172; Wheeler v. United States, 10 Cir., 1967, 382 F.2d 998.