**UNITED STATES of America**
v.
**Flemming ANDERSON, Appellant.**

**UNITED STATES of America**
v.
**William G. HALE, Appellant.**
**Nos. 72–1848 and 72–2066.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 1973.

Decided May 21, 1974.

Rehearing En Banc Denied Aug. 1, 1974.

Louis J. Briskman, Pittsburgh, Pa.,* with whom Sherman L. Cohn, Washington, D. C., Larry J. Ritchie, Washington, D. C., and Alan S. Gover, Houston, Tex.,* (all appointed by this court) were on the brief, for appellants.

David G. Larimer, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John R. Dugan, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, WISDOM**, United States Circuit Judge for the Fifth Circuit, and WILKEY, Circuit Judge.

BAZELON, Chief Judge:

In a joint trial appellants were convicted by a jury of robbery. Anderson received a two to eight year sentence; imposition of Hale's sentence was suspended, and he was placed on probation for three years. Hale seeks reversal on the ground that the prosecutor impermissibly sought to elicit his reason for not asserting his alibi to the police when arrested. Anderson seeks reversal on the ground that he was prejudiced by several comments in Hale's closing argument. We reverse Hale's conviction, and affirm Anderson's.[1]

I

The government's case rested largely on the testimony of Lonnie Arrington, the complaining witness. Arrington tes-

---

* Entered appearances as student counsel pursuant to Rule 20 of the General Rules of this court.

** Sitting by designation pursuant to Title 28 U.S.C. § 291(a).

1. Both appellants argue that the trial court's refusal to grant a motion for judgment of acquittal was erroneous since the testimony of the complaining witness was "inherently incredible." We find sufficient evidence to sustain the verdicts. The question of credibility was for the jury. *See, e. g.,* Bush v. United States, 126 U.S.App.D.C. 174, 375 F.2d 602 (1967).

tified that on June 1, 1971, he was on his way to purchase a pair of shoes when he stopped to chat with Hale, whom he had seen in the neighborhood, but did not know by name. Hale then followed him into the shoe store. Upon leaving, Arrington was accosted and robbed by a group of men. He immediately reported the robbery to the police. At first he claimed that $65 had been stolen, but later, after checking with his wife, he changed the figure to $96. While waiting for the police to escort him through the neighborhood in search of his attackers, Arrington noticed two men, and shouted, "there go [sic] a guy that was in the robbery." When the police ran toward the two men, they fled. Upon their capture, Arrington identified Hale as one of the robbers. Several months later, Arrington picked out Anderson from a group of photos shown to him by the police, and then identified him at a lineup.

The arresting officer testified that Hale had $123 in his pocket and $35 in his wallet when arrested. He also claimed that Arrington had stated, before Hale had been arrested, "that he believed one of [the robbers] was a man by the name of Billy Hale." This testimony directly contradicted Arrington's earlier testimony to the effect that he did not "tell the police [Hale's name], because I didn't know if it was [him] or not." [2]

Hale took the stand in his own defense and testified that he had encountered Arrington on the day in question. He asserted, however, that after separating from Arrington he was approached by three men who asked if Arrington had any money, and that he replied he "didn't know." Hale claimed that he then went to the Narcotics Treatment Center where he remained during the time of the alleged robbery.[3] He left the Center with a friend who subsequently purchased narcotics. Shortly after the purchase, the two men were approached by the police, and Hale fled because he feared another drug conviction.[4]

Hale also testified that his estranged wife had received her welfare check on the day in question, and that she had given him about $150 so that he could purchase some money orders for her, as he had done in the past.[5] His wife corroborated this testimony.

Anderson presented no evidence.

## II—HALE'S CLAIM

Appellant Hale argues that the trial court committed reversible error in failing to grant his motion for a mistrial after the prosecutor, on cross-examination, elicited from Hale an admission that he had not explained to the police the presence of $158 found on his person at the time of arrest. We find that: (A) the prosecutor's question was constitutionally impermissible; and (B) the court's failure to declare a mistrial was prejudicial error.

The record indicates that after arrest appellant was taken to the police station and informed of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), including

---

2. Arrington also stated that there was a witness to the robbery, who was never identified, who had told him that one of the robbers was named "Billy Hale or Bobby Hale." Although he initially testified that he did not identify Hale by name to the police, his subsequent testimony is confused. Counsel for Hale asked: "So you neglected to mention to the police that one of the individuals had given you the name of one of the robbers, is that right?" And Arrington answered, "I told them." The record does not reveal what it is that Arrington told the police.

3. An administrator from the Center testified that his records indicated that Hale had visited the Center on the day in question, but that they did not reveal the time of the visit.

4. Hale claimed that his previous conviction resulted from being arrested in the presence of a friend who was in possession of narcotics.

5. The owner of a local liquor store testified that he knew Hale, and that Hale had purchased money orders from him on several occasions.

his "right to remain silent." [6] He was then searched and found in possession of $158. A police interrogator thereupon asked "[w]here did you get the money?" Hale made no response.[7]

At trial, in an effort to impeach Hale's testimony that he was carrying a large sum of money because his wife had received her welfare check and had asked him to purchase some money orders for her, the prosecutor led Hale to admit that he had not offered that explanation to the police at the time of his arrest:

> Prosecutor: Did you in any way indicate [to the police] where the money came from?
>
> Hale: No, I didn't.
>
> Prosecutor: Why not?
>
> Hale: I didn't feel it was necessary at the time.[8]

6. Tr. at 259.

7. Tr. at 262.

8. Tr. at 259.

9. *See also* Schmerber v. California, 384 U.S. 757, 765–766, 86 S.Ct. 1826, 16 L.Ed.2d 908 n. 9 (1966).

10. *See, e. g.,* Fowle v. United States, 410 F.2d 48 (9th Cir. 1969); United States v. Brinson, 411 F.2d 1057 (6th Cir. 1969); United States v. Semensohn, 421 F.2d 1206 (2nd Cir. 1970). *See also* Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965). *But see* Sharp v. United States, 410 F.2d 969 (5th Cir. 1969). The *Sharp* majority inexplicably omits reference to the portion of *Miranda* at issue despite forceful reliance on it by Chief Judge Brown in dissent. 410 F.2d at 972.

11. Gillison v. United States, 130 U.S.App.D.C. 215, 399 F.2d 586 (1968).

12. Our dissenting colleague argues that the *Miranda* dictum is inapplicable to the facts of this case. The record, however, clearly indicates otherwise. Appellant was under police interrogation, the sort of *"accusation"* to which *Miranda* referred. *See* 384 U.S. at 444 & 468 n. 37. And, when he was asked "[w]here did you get the money?" he stood *"mute."* This fact was then *"use[d]"* against him *"at trial."* As the cases cited in note 10 *supra* demonstrate, the *Miranda* dictum applies precisely to these facts. Nor would it matter, despite the suggestion by the dissent, that Hale answered some questions

In *Miranda*, after holding that a defendant had a right to be advised that he could remain silent in the face of police interrogation, the Supreme Court went on to note:

> In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. *The prosecution may not, therefore, use at trial the fact that he stood mute or claimed at his privilege in the face of accusation.* 384 U.S. at 468 n. 37 (emphasis supplied).[9]

Relying on this dictum, several Circuits,[10] including our own,[11] have held that cross-examination of the sort in question in this case was improper.[12]

Recently, however, one Circuit has held,[13] and another has implied,[14] that

before remaining silent: "[T]here is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent . . ." *Miranda supra,* 384 U.S. at 475–476. In fact, the record does not reveal whether appellant answered any questions or made any statements.

13. United States v. Ramirez, 441 F.2d 950 (5th Cir. 1971).

14. In United States ex rel. Burt v. New Jersey, 475 F.2d 234 (3rd Cir. 1973), a defendant was arrested for a crime other than the homicide at issue in the appeal before the Third Circuit. At trial he explained that the homicide was accidental. The court held that defendant was properly impeached by his silence at the police station because he had not been accused of committing any homicide, and therefore should have notified the police if he knew about an accidental homicide. Two judges issued a concurring opinion seemingly on the ground that *Harris* allows impeachment by prior silence at the police station.

In a subsequent case a different panel of the same Circuit held that it was improper to impeach a defendant by pointing out that he invoked another of his *Miranda* rights, namely, the right to an attorney. United States ex rel. Macon v. Yeager, 476 F.2d 613 (3rd Cir. 1973). In the face of these two decisions a district court in the Third Circuit has recently held that a defendant can be impeached by his prior silence *only*

Harris v. New York, 401 U.S. 222, 91 S. Ct. 643, 28 L.Ed.2d 1 (1971), undercuts the portion of *Miranda* quoted above, and permits cross-examination regarding a defendant's refusal to offer an alibi or explanation to his police interrogators.

▮ In *Harris* the Court held that a defendant could be impeached by "prior inconsistent *utterances*" made at the time of his arrest even when they were made before the defendant was adequately apprised of his rights. The Fifth Circuit extended the *Harris* rationale to approve "the right of the prosecution to show [a defendant's] prior inconsistent *act of remaining silent* . . ."[15] The Tenth Circuit, on the other hand, has disagreed with the Fifth Circuit observing that:

> silence at the time of arrest is not an inconsistent or contradictory statement. Silence at the time of arrest is simply the exercise of a constitutional right that all persons must enjoy without qualification.[16]

We agree with the Tenth Circuit.

The premise underlying *Harris* is that if a defendant voluntarily gives statements to the police that *contradict* his trial testimony those statements are admissible because they are obviously relevant for assessing credibility. When, however, a defendant is informed that he has a right to remain silent, and then exercises that right, there is nothing inconsistent if he subsequently offers exculpatory testimony at trial. Virtually the same issue was considered in Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). There, petitioner refused to answer several questions put to him before the grand jury "on the ground that the answers would tend to incriminate him and that the Fifth Amendment therefore entitled him not to answer."[17] At trial these same questions were answered "in a way consistent with innocence," and "the Government was then allowed [for impeachment purposes] . . . to bring out in cross-examination that petitioner had pleaded his privilege before the grand jury as to these very questions."[18] The Court found that the exercise of the privilege was "wholly consistent with innocence," and therefore concluded, without dissent, that there was "no inconsistency" to support the cross-examination.[19] The Court relied on three factors: (*a*) petitioner repeatedly maintained his innocence before the grand jury; (*b*) a grand jury inquiry, unlike a trial, is in the nature of a secret proceeding, and "[i]nnocent men are more likely to plead the privilege in secret proceedings, where they testify without advice of counsel and without opportunity for cross-examination, than in open court proceedings . . .";[20] (*c*) "most important," at the time petitioner appeared before the grand jury he was "already considered a potential defendant" and therefore "it was quite natural for him to fear that he was being asked questions for the very purpose of providing evidence against himself."[21]

---

when police interrogation does not concern the crime for which the defendant is subsequently indicted. The district court then concluded that cross-examination of the sort at issue in this case was improper notwithstanding *Harris*. United States v. Holland, 360 F.Supp. 908 (E.D.Pa.1973).

15. United States v. Ramirez, 441 F.2d 950, 954 (5th Cir. 1971) (emphasis supplied).

16. Johnson v. Patterson, 475 F.2d 1066, 1068 (10th Cir. 1973). With respect to *Ramirez supra*, the Tenth Circuit said, "[t]he premise of *Ramirez* is that silence at the time of arrest is an act inconsistent with the testimony given at trial. . . . We simply deny the validity of the premise." 476 F.2d at 1068 n. 3. *See also* Deats v. Rodriguez, 477 F.2d 1023 (10th Cir. 1973).

17. 353 U.S. at 416. In the instant case Hale did not decline to answer on the ground that his answers might tend to incriminate him, but simply remained silent in the face of the police interrogator's instruction that he had "a right to remain silent."

18. 353 U.S. at 417.

19. 353 U.S. at 421, 422. *See also* Stewart v. United States, 366 U.S. 1, 7 n. 14, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961).

20. 353 U.S. at 422–423.

21. 353 U.S. at 423.

These reasons have even greater validity in the present case: (*a*) while the record does not disclose whether Hale insisted upon his innocence at the time of arrest, it clearly reveals that he steadfastly maintained his innocence throughout the proceedings; (*b*) police interrogation may be viewed as more "secret" than a grand jury proceeding which is conducted on the record and in the presence of the prosecutor and grand jurors. *Miranda's* rules were aimed precisely at dangers presented by the secret nature of police interrogation;[22] (*c*) Hale was more clearly a "potential defendant" then Grunewald since he had been identified by the victim as one of the robbers, and had been arrested by the police on suspicion of the instant offense.

In sum, application of the principles enunciated in *Grunewald* compels a finding that, as a matter of law,[23] there was nothing inconsistent between Hale's silence in interrogation and his alibi at trial. Thus, the basic premise required for triggering the *Harris* rationale is absent.[24]

Even if it could be said that appellant's silence at the police station was inconsistent with his testimony at trial *Harris* would nevertheless be inapplicable in the present circumstances. In *Harris* the accused did not exercice his constitutional right to remain silent, but rather *spoke*, albeit without first being advised of his rights. In the instant case, on the other hand, the accused explicitly availed himself of his right to remain silent. The Supreme Court has proscribed comment by a court or prosecutor on the fact that a defendant did not testify at trial on the ground that such comment "cuts down on the privilege by making its assertion costly." Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). The Court, relying upon this analysis, then ruled in *Miranda* that it is "impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation."[25] The rationale for this rule was articulated by Justice Black in his *Grunewald* concurrence:

[There are] no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution. 353 U.S. at 425–426.

22. *See Miranda supra*, 384 U.S. at 445 ("The difficulty in depicting what transpires at such interrogations stems from the fact that in this country they have largely taken place incommunicado.").

23. The *Grunewald* Court acknowledged that "the question whether a prior statement is sufficiently inconsistent to be allowed to go to the jury on the question of credibility is usually within the discretion of the trial court. But where such evidentiary matter has grave constitutional overtones, as it does here, we feel justified in exercising this Court's supervisory control . . ." 353 U.S. at 423–424.

24. *See* Fowle v. United States, 410 F.2d 48, 51 (9th Cir. 1969) ("Surely . . . [petitioner's] silence was no more contradictory of his later testimony than was the silence of [the petitioner in Grunewald].") ; John-

son v. Patterson, 475 F.2d 1066 (10th Cir. 1973).

25. 384 U.S. at 468 n. 37. *See* Gillison v. United States, 130 U.S.App.D.C. 215, 399 F.2d 586, 587 (1968) ("The distance between [*Griffin*] and the prosecutor's comments here . . . is infinitesimal.") ; Fowle v. United States, 410 F.2d 48, 51–55 (9th Cir. 1969) ; Johnson v. Patterson, 475 F.2d 1066, 1067–1068 (10th Cir. 1973). *See generally* Spevak v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) ; United States ex rel. Macon v. Yeager, 476 F.2d 613, 616 (3rd Cir. 1973) ("*Griffin* holds broadly that, at least in the criminal context, the relevant question is whether the particular *defendant* has been *harmed* by the state's use of the fact that he engaged in constitutionally protected conduct . . .") (emphasis in original).

Nothing in *Harris* undercuts this fundamental constitutional principle since *Harris* did not involve assertion of the constitutional right.[26]

Our conclusion that the prosecutor's question was improper is buttressed by the fact it would be grossly unfair to advise an accused simply that he had "a right to remain silent," and then use his silence against him at trial without at the very least having also informed him that if he chooses to exercise his right he may subsequently be impeached by that fact. The Sixth Circuit noted almost fifty years ago that if an accused's silence is to be used against him he "should be told, 'If you say anything, it will be used against you; if you do not say anything, that will be used against you.'"[27] The Supreme Court embraced these principles in Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L. Ed. 704 (1943), where a defendant who testified was allowed to assert his privilege against self-incrimination as to some questions without having been told that the prosecutor would be permitted to comment upon this assertion. The Court ruled that even if it was error to allow petitioner to invoke his privilege, it was nonetheless improper to permit prosecutorial comment because the defendant was thereby "deprive[d] . . . of an intelligent choice between claiming or waiving his privilege."[28]

**B.**

█ The government argues that the error was harmless since the trial court interrupted the prosecutor and informed the jury that Hale "was not required to indicate where the money came from . . . You may disregard it, ladies and gentlemen."[29] To avoid reversal, however, the error, being of constitutional magnitude,[30] must be harmless beyond a reasonable doubt.[31]

█ The government's case against Hale rests on three limbs: (*1*) the testimony of the complaining witness; (*2*) appellant's flight at the time of arrest; and (*3*) appellant's possession of $158.

(*1*) The testimony of the complaining witness was confused and contradictory.

26. The dissent relies heavily on Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), where the Court held that a defendant who testifies at his second trial, but who did not testify at the first trial, may be impeached by his prior silence when his purpose in testifying is to deny some statements attributed to him by a witness who has offered the same testimony at both trials. In *Grunewald supra*, the Court explicitly declined to reaffirm *Raffel*. 353 U.S. at 421. Four Justices concurring in *Grunewald* indicated that *Raffel* should be overruled. The rationale of that concurrence provided the framework for the Court's subsequent decision in *Griffin*. Accordingly, there is a serious question whether *Raffel* has any remaining vitality. *See* Note, Use of Silence, 33 Md.L.Rev. 363, 367 n. 21 (1973). *See also* Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961) (cannot attack witness's demeanor by introducing fact that he failed to testify at former trials).

In any event, *Raffel* is clearly distinguishable from the present circumstances because there the petitioner was impeached hy his refusal to testify at a former *trial*, whereas in the instant case appellant declined to speak with police interrogators. There are good reasons why a defendant would refuse to speak to the police in a proceeding that is off the record, and at a time when he is without the advice of counsel, and then decide to testify at trial. *See Grunewald supra*.

27. McCarthy v. United States, 25 F.2d 298 (6th Cir. 1928). *See also* Johnson v. Patterson, 475 F.2d 1066 (10th Cir. 1973); United States v. Brinson, 411 F.2d 1057 (6th Cir. 1969); Fowle v. United States, 410 F.2d 48 (9th Cir. 1969).

28. 318 U.S. at 198. The Court noted:
Elementary fairness requires that an accused not be misled on th[is] score. If advised by the court that his claim of privilege though granted would be used against him, he well might never claim it. *Id.* at 197.
This rationale is equally compelling in the face of police interrogation and advice.

29. Tr. at 259.

30. *See* Gillison v. United States, 130 U.S. App.D.C. 215, 399 F.2d 586, 588 n. 8 (1968).

31. Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967).

The trial court characterized it as follows:

> [O]ne view . . . with respect to this complainant might be that he has been contradicted to such a point that he wouldn't be believed. Another perfectly fair view . . . is that he is an entirely sincere witness who has a limited intellectual ability, [and] who was in part confused and misled in some of his answers. . .[32]

(2) With respect to appellant's flight upon apprehension, he explained that his companion had purchased heroin, and, since he had a prior narcotics conviction, he was afraid. He claimed that his former narcotics conviction arose in the same circumstances; that is, when he was not himself in possession of drugs.

(3) In the face of the weak testimony by the complaining witness, and the limited probity of the evidence on flight,[33] evidence of the large sum of money found on appellant played a central part in the government's case. Appellant attacked this evidence in two ways: first, by showing that the sum of money found on him was much greater than the amount allegedly stolen; and second, by offering an alibi, corroborated by his wife, explaining his possession of the large sum. In this context the improper question by the prosecutor leading to Hale's admission that he did not offer his alibi to the police was calculated to break a critical point in the defense since it was apparently intended to indicate that the alibi had been fabricated sometime between arrest and trial.

In Stewart v. United States, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961), petitioner, who had been convicted three times—his first two convictions having been reversed by this court [34]—declined to testify at the first two trials, but took the stand at the third "in an apparent effort to bolster [his] contention of insanity [the sole issue in the case]." [35] On cross-examination, after the defendant admitted that he had been "tried on two other occasions," the prosecutor asked: "This is the first time you have gone on the stand, isn't it?" [36] The Court found the question improper and concluded that the error was not harmless. Speaking of a potential cautionary instruction to the jury, such as the one given in this case, the Court said:

> [T]he danger of the situation would have been increased by a cautionary instruction in that such an instruction would have again brought the jury's attention to petitioner's prior failure to testify. 366 U.S. at 10.

Thus, the error in the present case, when considered in light of the evidence against appellant, cannot be deemed harmless beyond a reasonable doubt.[37]

### III—ANDERSON'S CLAIM

██ Appellant Anderson contends that his constitutional right to remain silent was abridged by Hale's closing argument to the jury:

> All they can do—all people can do is come in and tell you exactly what they did that day. . . . That is all they are required to do. They are not even required to do that, ladies and gentlemen.
>
> And, of course, Mr. Hale took the stand and did just that.[38]

Anderson maintains that this statement urged the jury to draw a negative infer-

---

32. Tr. at 187.

33. *See generally* Bailey v. United States, 135 U.S.App.D.C. 95, 416 F.2d 1110, 1114 & n. 29 (1969); Miller v. United States, 116 U.S.App.D.C. 45, 320 F.2d 767 (1963).

34. Stewart v. United States, 94 U.S.App.D.C. 293, 214 F.2d 879 (1954); Stewart v. United States, 101 U.S.App.D.C. 51, 247 F.2d 42 (1957).

35. 366 U.S. at 3.

36. 366 U.S. at 4.

37. *See, e. g.*, United States ex rel. Macon v. Yeager, 476 F.2d 613, 616–617 (3rd Cir. 1973); Gillison v. United States, 130 U.S.App.D.C. 215, 399 F.2d 586, 588 (1968). *Compare* Leake v. Cox, 432 F.2d 982 (4th Cir. 1970) ("overwhelming evidence of guilt"); United States v. Wick, 416 F.2d 61 (7th Cir. 1969) ("overwhelming evidence against the defendant").

38. Tr. at 294.

·ence from Anderson's failure to testify. We have studied Hale's closing argument, and find that this statement, by itself,[39] did not "invite an inference of [Anderson's] guilt." United States v. Hines, 147 U.S.App.D.C. 249, 455 F.2d 1317, 1335–1336 (1971) (Bazelon, C. J., dissenting).[40] Indeed, shortly after completion of Hale's closing argument, the court instructed the jury that it "must not draw any inference of guilt against the defendant because he did not testify." [41] In these circumstances, we find no error warranting reversal of Anderson's conviction.

So ordered.

WILKEY, Circuit Judge (dissenting):

The convictions of both defendant Anderson and defendant Hale should be affirmed. I dissent from Chief Judge Bazzelon's opinion insofar as it reverses Hale's conviction. In my judgment there was no error, and if the majority have ferreted out a flaw in the justice administered in the District Court, such error was harmless under all reasonable standards.

## I. THE ASSERTED PERNICIOUS PASSAGE

The shaky ground on which the majority overturns Hale's conviction concerns alleged infringement of defendant's right to remain silent when questioned by police after arrest. At trial, when the prosecutor was cross-examining Hale, who had elected to testify in his own defense, the following exchange occurred:

Q. Did they search you?

A. Yes, they did.

Q. Did they find some money on you?

A. Yes, they did.

Q. Did you *in any way indicate* where that money came from?

A. No, I didn't.

Q. Why not?

A. I didn't feel that *it was necessary* at the time.

Q. You were advised of · your rights, were you not?

A. Yes.[1]

Directly thereafter District Judge Gesell *sua sponte* gave a cautionary instruction:

Court: He is not required to indicate where the money came from. There is no responsibility on his part in regard to that.

Hale's Counsel: Thank you, your Honor.

Anderson's Counsel: I ask that the question and answer be stricken.

Court: I indicated to the jury that it is clearly an inappropriate question. You may disregard it, ladies and gentlemen. The defendant is not required to give any explanation whatsoever at the time of his arrest.[2]

*Compare* United States v. Hines, 147 U.S. App.D.C. 249, 455 F.2d 1317 (1971), *with id.* at 1335 (Bazelon, C. J., dissenting).

39. Anderson argues that this statement was particularly prejudicial because other parts of Hale's closing argument attempted to place the blame on Anderson while exonerating Hale. Anderson cites several statements in Hale's argument indicating that Arrington had testified before the grand jury that *Hale* had committed certain inculpatory acts, whereas at trial he testified that *Anderson* did these acts. The record, however, does not support Anderson's claim. When placed in context, it is clear that the statements in Hale's closing argument were aimed solely at convincing the jury that *Arrington* was wholly incredible since he continually changed his story. Thus, Anderson was not harmed. *See* DeLuna v. United States, 308 F.2d 140 (5th Cir. 1962); United States v. Barney, 371 F.2d 166 (7th Cir. 1966).

40. In *Hines*, counsel for one co-defendant argued "you and I, if we were innocent, we would take the stand to try to exonerate ourselves." 455 F.2d at 1334.

41. Tr. at 308.

1. Record at 259 (emphasis supplied).

2. Record at 259–60. In my view the trial judge acted in an excess of caution in telling the jury, "You may disregard it." A more correct caution would have been, "You may only consider the question and answer as it may bear, if in your judgment it does bear, on Mr. Hale's credibility."

## II. CREDIBILITY OF THE WITNESS-DEFENDANT PLACED IN ISSUE

This cross-examination of the defendant on the witness stand did not violate defendant's Fifth Amendment right against compelled self-incrimination.[3] Nor did it violate the right to silence expressed in Miranda v. Arizona, that

it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation.[4]

The majority rely on this quotation from *Miranda*, a part of *Miranda* which, it should be noted initially, is a footnoted dictum. In *Miranda* the defendant talked without a proper or timely warning, which was admittedly given here. In *Miranda* apparently the defendant never took the stand; here Hale took the stand to tell his complete story.

The *Miranda* footnote dictum applies, if it applies at all, to a situation in which the defendant "stood *mute,* or claimed his *privilege* in the face of *accusation.*" There is no testimony here that Hale ever claimed any privilege; there is no testimony[5] by either Hale or the police officers or any witness as to Hale standing mute; nor is there any testimony of any police accusation.

Regretfully, I must point out that the dialogue—in quotes—my colleagues cite in the text at note 7 and in note 12, as testimony as to what defendant Hale *said* in answer to police questioning, is *not evidence at all.* Hale never testified to this, no police witness testified to this, the jury never heard any such words. The "dialogue" is lifted from a bench conference at which the Assistant U.S. Attorney purported to give his belief as to what occurred at the police station. The jury never would have been permitted to receive any such hearsay from the prosecutor, who of course was never there. My colleagues thus reverse this case by relying heavily upon unsworn hearsay "testimony" never heard by the jury.

The record in Hale's case simply does *not* support the action of the majority in reversing Hale's conviction, even if the *Miranda* footnote dictum be taken as good law applicable to Hale's case *before trial.*

As to Hale's position *at trial,* in contrast to Miranda, Hale took the stand. When he did, he waived his privilege against self-incrimination; he placed his credibility in issue just as any other witness does. There can be no question about this. For if the credibility of the defendant in some way is subject to a more *limited* challenge than that of other witnesses, then logically the jury should be so instructed. A defendant should not be able to offer testimony that is subject to less challenge than that of any other witness, without the jury being instructed that this is so and that they can evaluate the testimony ac-

---

3. The Fifth Amendment provides that "No person . . . shall be compelled in any criminal case to be a witness against himself."

4. 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966).

5. In a conference at the bench the following exchange occurred:

Court: Do you have any evidence that he gave a contrary statement to the police?
   Prosecutor: They asked him, "Where did you get the money?" He couldn't account for it.
   Court: What did he say?

Prosecutor: He wouldn't say anything. He couldn't account for it. They asked him whether he was working or wasn't working. He wouldn't indicate.
   Court: That question was highly improper. I tried to correct it. I think I have corrected it.
Record at 261–62. This appears to be the only exchange in the record which indicates the nature of the police interrogation of defendant after his arrest. It is not first-hand admissible testimony, nor does it purport to be a complete account of the dialogue between police and defendant. The conclusion that some dialogue took place is inescapable.

cordingly. And no one suggests here that this be done. So we must assume that evidence of statements made, of explanations not made, and when made, if relevant to the witness Hale's credibility on the testimony he chooses to give on the stand, is admissible.

In reference to the $150 found on his person at the time of arrest, Hale told the jury on direct examination that he had obtained the $150 from his wife in order to purchase money orders. He thus assuredly did not stand mute or claim any privilege at trial. He put into evidence, for the jury to believe or disbelieve, his explanation of where he got the $150. After such testimony, as part of the usual and proper technique for testing any witness' credibility, the most obvious logical inquiry was whether this or any other explanation had been given previously. This the prosecutor proceeded to do, and such was thoroughly permissible.

It is clear that under Harris v. New York,[6] if Hale had given a contrary explanation of the source of his money to the police, such an explanation would be admissible to impeach his credibility, assuming that his explanation was voluntary.[7] Chief Justice Burger wrote for the Court that

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.[8]

In the case at bar, Hale simply gave the police no reason for the presence of a large sum of money found on his person.

The failure previously to offer an explanation conceivably carries less of an adverse inference as to the witness' credibility, but the logical relationship of either a different or no previous explanation to an explanation offered for the first time at trial is exactly the same. Unless the jury is *obliged* to accept the testimony of a defendant under *standards* entirely *different* from that of any other witness, then this failure to explain should be made known to the jury to assist in evaluating the witness-defendant's testimony, with the overall objective of arriving at the truth.

The Supreme Court has not considered this issue since it decided in *Harris* that prior inconsistent statements could be introduced. However, the Court did consider the issue in 1926 in *Raffel v. United States*.[9] There the Court found it permissible to require the defendant who took the stand at his second trial to disclose that he had not testified in the first trial (where the jury failed to reach a verdict). The Court stated,

> The immunity from giving testimony is one which the defendant may waive by offering himself as a witness. When he takes the stand in his own behalf, *he does so as any other witness*, and within the limits of the appropriate rules he may be cross-examined as to the facts in issue. He may be examined for the purpose of impeaching his credibility. His *failure to deny or explain evidence of incriminating circumstances* of which he may have knowledge, *may be the basis of adverse inference*, and the jury may be so instructed. His waiver is not partial; having once cast aside the cloak of immunity, he may not resume it at will, whenever cross-examination may be inconvenient or embarrassing.[10]

---

6. 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

7. *Harris* merely requires that the defendant's statement be voluntary; the *Miranda* warnings need not be given.

8. 401 U.S. at 225 (citations omitted).

9. 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926).

10. *Id.* at 496–497 (citations omitted) (emphasis supplied).

The Court concluded that,

> The safeguards against self-incrimination are for the benefit of those who do not wish to become witnesses in their own behalf and not for those who do. There is a sound policy in requiring the accused who offers himself as a witness to do so without reservation, *as does any other witness.*[11]

The Supreme Court reconsidered *Raffel* in a 1957 case, Grunewald v. United States,[12] where it held *Raffel* not controlling in the circumstances of the later case. In *Grunewald* the prosecution brought out in cross-examination of the defendant that the latter had pleaded his Fifth Amendment privilege before the grand jury when he was asked questions identical to those he subsequently answered at trial. In the charge to the jury, the trial judge stated that defendant's prior assertion of privilege could be used only to reflect on his credibility and could not provide an inference as to guilt or innocence. The Supreme Court felt that it was necessary to determine whether, given the particular circumstances of the case, "the cross-examination should have been excluded because its probative value on the issue of [defendant's] credibility was so negligible as to be far *outweighed* by its possible impermissible impact on the jury."[13] Exercising its supervisory power over the administration of federal criminal justice, the Court concluded that defendant's prior silence was not inconsistent with his later statement on the stand and that there was a serious likelihood that the jury might equate assertion of the privilege with guilt. Consequently, the Court required a new trial for the defendant.

*Grunewald* is distinct from Hale's case in several ways. That no inference can or should be drawn from the assertion of the Fifth Amendment privilege against self-incrimination has long been thought necessary to preserve the vitality of the privilege itself. The 1957 *Grunewald* decision came at a time when the use (or abuse) of the privilege was under severe attack, and there existed an undoubted likelihood that the average juror would equate "taking the Fifth" to a confession of guilt. Whatever the logical relevance of this to any later explanation offered by a defendant, the real danger of prejudice would outweigh any relevance. The same cannot be said of Hale's situation. Nothing was said, either in question or answer, about a fear of incrimination. Hale was simply asked, "Did you in any way indicate where that money came from?" He answered equally simply, "No, I didn't. . . . I didn't feel it was necessary at the time."

My two colleagues believe that the jury could draw such an unfair and prejudicial inference from this that, on the extended authority of a footnoted dictum in *Miranda,* the entire trial goes for nought and the conviction *must* be set aside. To me, especially in view of the trial judge's immediate corrective instruction, which to my mind went too far in restoring the proper balance,[14] this result is an incredible perversion of the judicial process.

The issue raised here is governed by *Raffel,* not *Grunewald.* The issue in *Raffel* was squarely focused by a certified question: "Was it error to require the defendant, Raffel, offering himself as a witness upon the second trial to disclose that he had not testified as a witness in his own behalf upon the first trial?"[15] In answer to which, in Mr. Justice Harlan's opinion for the Court in *Grunewald,* "[t]his Court held, in effect, that when a criminal defendant takes the stand, he waives his privilege completely and becomes subject to cross-examination impeaching his credibility just like any other witness."[16] I submit this is exactly what Hale did

11. *Id.* at 499 (emphasis supplied).

12. 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).

13. *Id.* at 420 (emphasis supplied).

14. *See* n. 2 *supra.*

15. 271 U.S. at 496.

16. 353 U.S. at 420.

here: in his dialogue with the police he chose not to tell them where he got the money, and this omission, like Raffel's choice not to testify in his first trial, can properly be brought out before the jury. There was no problem of a plea of privilege by Hale sought to be used against him, as in *Grunewald*.

Furthermore, the four concurring Justices in *Grunewald* interpreted and disagreed with the Court's opinion: "I do not, like the Court, rest my conclusion on the special circumstances of this case." [17] So *Grunewald* is a case resting on "special circumstances," and since Justice Harlan and the Court resisted the entreaties of the four to overrule *Raffel*,[18] it is the Supreme Court's decision in *Raffel*, not in *Grunewald*, which governs Hale's case here.

I am sustained in my view, not only by what I consider the proper analysis of *Harris, Miranda, Grunewald,* and *Raffel*, but also by recent decisions in other circuits.

Although the Supreme Court has not reconsidered the permissibility of cross-examination by the prosecution of a defendant concerning his earlier silence, hence such cross-examination is still clearly authorized by *Raffel*, several circuits have considered the question in light of Harris v. New York. The Fifth Circuit, in United States v. Ramirez,[19] found such cross-examination proper. The defendant in that case testified at trial that he had been coerced into selling heroin by threats of harm from strangers. On cross-examination, he admitted that he had never told the police this fact, and in the closing argument the prosecutor urged that this was not the way a truthful man would act. No objection was raised at trial. On appeal, the Fifth Circuit held that *Harris* mandates the conclusion that

Once [defendant] elected to testify and assert the defense of coercion *he became subject to the "traditional truth-testing devices of the adversary process,"* including the right of the prosecution to show *his prior inconsistent act of remaining silent at the time of his arrest.*[20]

The only difference between the case at bar and *Ramirez* is that the District Judge here *sua sponte* gave cautionary instructions informing the jury that defendant had no obligation to tell the police where he had obtained the money. If there was error harmful to Hale, there was error harmful to Ramirez—except that Hale had the benefit of an immediate curative instruction.

The Third Circuit also adopted the *Ramirez* approach in United States ex rel. Burt v. State of New Jersey.[21] There defendant took the stand and explained that a shooting was accidental rather than intentional. On cross-examination, when asked why he had not told anyone what had happened, he had no explanation. The prosecution sought to attack his credibility on the theory that someone responsible for an accidental injury would attempt to obtain help for the injured.[22] The Third Circuit held the cross-examination permissible. It referred to *Ramirez* with approval.

The concurring opinion of Judge Rosenn in *Burt*, which was joined by one of the other two panel members and

17. *Id.* at 425 (Black, J., concurring).

18. *Id.* at 426 (Black, J., concurring).

19. 441 F.2d 950 (5th Cir.), cert. denied, 404 U.S. 869, 92 S.Ct. 91, 30 L.Ed.2d 113 (1971).

20. *Id.* at 954 (emphasis supplied).

21. 475 F.2d 234 (3rd Cir. 1973).

22. *Burt* involved a somewhat odd factual situation, in that on the same evening as the shooting, the defendant was arrested for breaking and entering a store, which offense was unconnected with the shooting death. Defendant's failure to comment on the "accidental" shooting to the police was urged by the prosecutor to show the unreliability of defendant's testimony at trial. The defendant had not been questioned by the police concerning the shooting.

thus becomes a majority opinion, was even more explicit:

> If the shooting was accidental as claimed by Burt, his silence both before he was a suspect and after was inconsistent with his at-trial testimony that the shooting was accidental. Such inconsistency, *Harris* holds, must be subject to the truth-seeking process of cross-examination. I perceive no difference between impeachment by prior inconsistent statements made in the absence of a *Miranda* warning and impeachment by prior silence inconsistent with trial testimony which justifies not applying the *Harris* rationale in the present case.[23]

Traditionally in our adversary system cross-examination is used to probe the credibility of direct testimony. Without such cross-examination, perjury is likely to go undiscovered. When a defendant takes the stand, his testimony may be examined in the light of his past voluntary statements. Likewise, his past silence may be introduced, when it may be inconsistent with the story he tells on the stand.[24] And note particularly, what we are dealing with in Hale's case are entirely voluntary acts, either of statement or non-statement. There is no suggestion of a *Miranda* situation.

Griffin v. California[25] established that if the defendant does not take the stand at trial, neither the prosecutor nor the judge may comment on his silence. However, once the defendant does take the stand, I believe his credibility may be tested not only by prior inconsistent statements as mandated by *Harris*, but also by prior inconsistent silence.

A contrary view was taken by the majority in a Tenth Circuit case, Johnson v. Patterson.[26] They believed that *Harris* was distinguishable from a case concerning a defendant's silence at the time of arrest, for they thought that the latter was

> not an inconsistent or contradictory statement. Silence at the time of arrest is simply the exercise of a constitutional right that all persons must enjoy without qualification. It would indeed be irregular and anomalous to warn an accused that he has the right to remain silent, that if he says anything it may be used against him, however, if he does remain silent that too may be used against him.[27]

However, I agree with Judge Breitenstein's dissent that once having waived his privilege against compelled self-incrimination by testifying at trial, the defendant may not reassert his privilege when the questioning becomes tough.[28] The waiver is not partial.[29] Once the defendant has opened up a subject area on direct examination, the principle that a witness should testify truthfully prevails; cross-examination of the witness-defendant to determine if he made similar statements previously is logically necessary in evaluating his truth or credibility. As Chief Justice (then Circuit Judge) Burger remarked in Tate v. United States, "At best the theory that

---

23. 475 F.2d at 237–238.

24. As Judge Rosenn wrote,
    If inconsistencies cannot be demonstrated to a jury, the truth-seeking process is straitjacketed. The defendant, of course, is free to explain away seeming inconsistencies. The adversarial system requires that the jury, as triers of fact, make the final determination of which testimony and conduct to believe.
    *Id.* at 238.

25. 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

26. 475 F.2d 1066 (10th Cir. 1973), cert. denied, 414 U.S. 878, 94 S.Ct. 64, 38 L.Ed.2d

124. It should be noted that in *Johnson*, instead of the trial judge telling the jury to disregard the question and answer concerning the defendant's previous silence, there was no cautionary instruction and the prosecutor was allowed to refer in closing argument to defendant's silence compared to his explanation at trial.

27. *Id.* at 1068 (citations omitted). This view was reiterated by the same Circuit in Deats v. Rodriguez, 477 F.2d 1023 (10th Cir. 1973).

28. 475 F.2d at 1068.

29. *See* Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926).

judicial suppression of truth has a beneficial effect on the administration of justice is unproved and perhaps unprovable." [30]

It is true that the prior silence of the witness-defendant must be inconsistent with his later statement at trial, for otherwise the prior silence would not be capable of impeaching his credibility. But in the case at bar, the failure to explain to the police the source of the money does cast doubt upon the later explanation that defendant's wife had given him the money. The jury should be allowed to evaluate the witness-defendant's testimony at trial in light of his past silence, which is arguably inconsistent with an innocent explanation.

This view is similar to that of the British Criminal Law Revision Committee. In a report presented to Parliament in 1972, the Committee, which had been established by the Home Secretary, recommended that it should be "permissible for the jury or magistrates' court to draw whatever inferences are reasonable from the failure of the accused, when interrogated, to mention a defence which he puts forward at his trial." [31] The suspect would have a right to remain silent; but if he did so, that fact might be introduced at trial. It would be for the court or jury to determine if an adverse inference should be drawn from the defendant's prior omission.[32]

30. 109 U.S.App.D.C. 13, 17, 283 F.2d 377, 381 (1960).

31. Criminal Law Revision Committee, Eleventh Report, Evidence (General) 16 (1972). Prior law generally did not permit comment on defendant's prior silence. See id. at 16–17; R. Cross, Evidence 180 (1967). It is interesting to note that the law Revision Committee Draft Bill makes the change in Clause 1 of Part I:
1.—(1) Where in any proceedings against a person for an offence evidence is given that the accused—
(a) at any time before he was charged with the offence, on being questioned by a police officer trying to discover whether or by whom the offence had been committed, failed to mention any fact relied on in his defence in those proceedings; or
(b) on being charged with the offence or officially informed that he might be prosecuted for it, failed to mention any such fact,
being a fact which in the circumstances existing at the time he could reasonably have been expected to mention when so questioned, charged or informed, as the case may be, the court, in determining whether to commit the accused for trial or whether there is a case to answer, and the court or jury, in determining whether the accused is guilty of the offence charged, may draw such inferences from the failure as appear proper; and the failure may, on the basis of such inferences, be treated as, or as capable of amounting to, corroboration of any evidence given against the accused in relation to which the failure is material.
Criminal Law Revision Committee Report at 172.

32. Criminal Law Revision Committee Report at 21. Even if an improper inference is permitted by the trial judge's "misdirection," it may be "harmless error" under the present British standard. Compare Hale's case with a recent British criminal appeal, discussed by the Committee in regard to the effect of the proposed change:
30. In our opinion it is wrong that it should not be permissible for the jury or magistrates' court to draw whatever inferences are reasonable from the failure of the accused, when interrogated, to mention a defence which he puts forward at his trial. To forbid it seems to us to be contrary to common sense and, without helping the innocent, to give an unnecessary advantage to the guilty. Hardened criminals often take advantage of the present rule to refuse to answer any questions at all, and this may greatly hamper the police and even bring their investigations to a halt. Therefore the abolition of the restriction would help justice. . . . [In *Sullivan* (1967), 51 Cr.App.R. 102,] the accused, who was convicted of smuggling watches from Switzerland, had refused to answer questions by Customs officers. The judge, in the course of his summing up, had referred to the refusal and gone on:
"Of course bear in mind that he was fully entitled to refuse to answer questions, he has an absolute right to do just that, and it is not to be held against him that he did that. But you might well think that if a man is innocent he would be anxious to answer questions. Now, members of the jury, that is what it really amounts to."
The Court of Appeal said with reference to this:

Of course the most recent British thought on this question is persuasive at best. But then, the British are not an uncivilized people, and they have had some years of experience in administering a system of justice which other nations view with a bit of envy.

## III. ERROR HARMLESS BEYOND A REASONABLE DOUBT

Chief Judge Bazelon and Judge Wisdom reverse this conviction on *four lines* of a 326-page transcript:

Q. Did you *in any way indicate* where that money came from?
A. No, I didn't.
Q. Why not?
A. I didn't feel that *it was necessary* at the time.

Assuming this was error, even *uncorrected* error, I would be loath to reverse a conviction which appears solidly founded.[33] But the alert trial judge here immediately *sua sponte* gave a corrective instruction, removing from the jury's mind any inference to be drawn from Hale's failure *to offer* an explanation for the money at the time of his arrest.

It should be observed that both the prosecutor's questions and Hale's replies were couched in terms which implied

"It seems pretty plain that all the members of that jury, if they had any common sense at all, must have been saying to themselves precisely what the learned judge said to them. The appellant was not obliged to answer, but how odd, if he was innocent, that he should not have been anxious to tell the Customs officer why he had been to Geneva, whether he put the watches in the bag, and so on." Then, after referring to the authorities, the judgment went to to say that sometimes comment on the accused's silence was unfair but that there was no unfairness in this case. It then continued:

"The line dividing what may be said and what may not be said is a very fine one, and it is perhaps doubtful whether in a case like the present it would be even perceptible to the members of any ordinary jury."

The court held that they were compelled, in the existing state of the law, to hold that the judge's comment was a misdirection, but they dismissed the appeal under the proviso to s. 4(1) of the Criminal Appeal Act 1907 (c. 23) on the ground that "no possible miscarriage of justice occurred."

that Hale had simply failed to volunteer an explanation; there was nothing suggesting that Hale had been asked a direct question by the police and had refused to answer (whether this actually occurred is thus immaterial, because the jury received no such implication). Thus the effect of the two improper questions if they were such, was easily subject to being corrected by the trial court's cautionary instruction, which, in my judgment it was. In fact, the judge's cautionary instruction was so quick and emphatic that it may well have knocked out any inference unfavorable to the defendant Hale which the prosecution had hoped to draw from the mere fact of Hale's possession of the $150 immediately after the robbery.

The standard of harmless error beyond a reasonable doubt is well known from Chapman v. California,[34] which requires that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." This standard was further elaborated in Anderson v. Nelson: "comment on a defendant's failure to testify [at trial] cannot be labeled harmless error in a case where such comment is extensive, where an inference of guilt

*Id.* at 17–18 (citations omitted). So the present British rule, with the factor of "harmless error" properly considered, would sustain Hale's conviction, as discussed in Part III of this opinion.

33. Anytime a victim reports himself robbed, describes generally his assailants, sets out with the police in immediate search of them, spots two men walking some distance away, excitedly yells that one of them was *one* of the robbers, unerringly identifies *one* of the pair (but not the other) as one of the perpetrators of the crime, the identified accused having on his person a comparatively large sum of money for the possession of which he offers no explanation whatever (not even as wages for current employment), all of this adds up to about as solid evidence in ordinary street crime as the courts ever get. A jury of our local citizens thought so. That the victim later became mixed up on irrelevant details is insignificant when compared with his certainty of identification of Hale immediately after the crime.

34. 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L. Ed.2d 705 (1967).

from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal." [35] In the case at bar, the comment on the defendant's silence *before the police* was not extensive; no inference of guilt was stressed to the jury; and a cautionary instruction was given.[36]

If those four lines in Hale's trial, followed immediately by a corrective instruction, do not constitute harmless error beyond a reasonable doubt, have my two colleagues left anything of the Supreme Court's *Chapman* standard in this Circuit?

I would affirm Hale's conviction.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

## ORDER

PER CURIAM.

On consideration of appellee's suggestion for rehearing *en banc*,

Ordered by the Court *en banc* that the aforesaid suggestion is denied.

Statement of Circuit Judges TAMM, MacKINNON, ROBB and WILKEY as to why they would grant Rehearing *En Banc*:

As to the existence of any error in the trial, the court's majority opinion is contrary to the Supreme Court's decision in Raffell v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), a decision which the Supreme Court has specifically declined to overrule. The majority opinion is also contrary to recent decisions of the Third and Fifth Circuits, although in agreement with a two-to-one decision of the Tenth Circuit, as cited in Judge Wilkey's dissent.

As to any prejudice to the defendant Hale, even if any error occurred, it was certainly cured by the trial court's prompt instruction and was harmless beyond a reasonable doubt. The majority opinion here attempts to abolish in this Circuit the Supreme Court standard of harmless error laid down in Chapman v.

California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

On both grounds the panel majority decision merits review by our full court.

---

35. 390 U.S. 523, 523–524, 88 S.Ct. 1133, 1134, 20 L.Ed.2d 81 (1968).

36. *See also* Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), where the Supreme Court again distinguished between "ordinary trial error" and "egregious misconduct" amounting to a denial of constitutional due process.